[American Union Telegraph Co. v. Daughtery.]


# American Union Telegraph Company v. Daughtery.

89 191
110 467
89 191
117 579
89 191
121 391
122 434
122 435
122 533
89 191
127 581

*Action for Damages against Telegraph Company.*

1.  *Amendment of complaint; change of parties.*—In an action against a telegraph company, to recover damages for its failure to transmit and del.ver a message within a reasonable time, the original complaint being in the name of the person for whom the dispatch was sent, an amendment may be allowed (Code, § 2833), by adding the name of his brokers, who sent the dispatch in their own name, and making them sue for his use.

2.  *Secondary proof of telegram.*—As to the proof of the loss and contents of a telegram, the same rules of evidence apply as to other writings; and though the sufficiency of the preliminary proof of loss is addressed to the court, a witness can not be allowed to testify from hearsay as to the fact of loss or destruction.

3.  *Secondary evidence as to lost deposition*—Secondary evidence of the contents of a lost deposition can not be received, when it is not shown that the opposite party had notice of the filing of the interrogatories, or was called on to cross-examine the witness, nor that the deposition was read on the former trial of the cause.

4.  *Conditions limiting liability of telegraph company; unrepeated messages.*—Conditions expressed in the printed blanks on which telegraphic messages are required to be written, limiting the liability of the company in the case of an unrepeated message, do not exempt it from liability for the negligence of its own agents; and a plea which sets up those conditions, but does not negative such negligence, is defective.

5.  *Measure of damages; cipher messages*—For negligence in the transmission of a cipher message, the meaning of which is not explained to the receiving operator, the measure of damages recoverable against the telegraph company is the same as if the message was in ordinary language; that is, the company is liable for the damages naturally and proximately resulting from the failure or delay, but not for damages arising from special collateral circumstances which are not communicated, and in reference to which the parties are not presumed to have contracted; and the message being an order to New York brokers, to sell cotton on account of the sender, the measure of damages is the depreciation in the market price of cotton during the period of delay. (SOMERVILLE, J., *dissenting*, held that only nominal damages were recoverable, or, at most, the price paid for sending the message.)


APPEAL from the Circuit Court of Lee.

Tried before the Hon. JESSE M. CARMICHAEL.

This action was brought by H. L. Daughtery, against the appellant corporation, to recover damages for its failure to forward a telegram within a reasonable time; and was commenced on.the 4th February, 1881. The message was sent from Opelika, January 6th, 1881, addressed to Lehman Brothers, New York, and in these words: "*Socket, Daughtery,*

*to cover, bottomed, incendiary, bouncer, iucarnate;*" which was explained to mean, "*Sell on account of Daughtery, to cover,* 100 *June,* 200 *May,*" and was an instruction to them to sell 300 bales of cotton on his account. The message was sent for plaintiff by Renfro Brothers, but in their own name; and during the trial, as the bill of exceptions shows, on this fact appearing, the court allowed the plaintiff to amend the summons and complaint, by adding the names of the surviving partners of that firm, suing for his use. The defendant objected and excepted to the allowance of the amendment, and pleaded the statute of limitations of six years to the complaint as amended, to which plea a demurrer was sustained.

The complaint contained seven counts, to which a demurrer was interposed assigning nine grounds or causes of demurrer, which were, in substance, (1) that no contract between plaintiff and defendant was shown; (2) that the message was in cipher, and unintelligible, and its meaning was not explained to the receiving operator; (3) that the message was part of a gambling contract, which was illegal and void, no actual sale of cotton being contemplated or intended, but only a payment of the difference in price. The court overruled the demurrer, and the defendant then pleaded (1) the general issue, on which issue was joined; (2) "that the contract made by defendant with Renfro Bros. was, that defendant was not to be liable for damages from any failure to transmit or deliver, or from any error in the transmission or delivery of an unrepeated message, but, to guard against errors, the company will repeat back any telegram for an extra payment, or one half of the regular rate, and in that case it is not to be liable for damages beyond fifty times the amount paid for sending and repeating the telegram; and defendant avers that in this case there was not any amount paid for repeating said telegram, and the same was not offered to be sent as a repeated telegram." To this plea the court sustained a demurrer. The defendant pleaded, also, (3) that the message was in cipher, was not intelligible, and was not explained to the operator; and to this plea, also, the court sustained a demurrer.

The telegram was not produced on the trial, but proof of its loss was made as follows: J. H. Purnell, the manager in charge of the office of the Western Union Telegraph Company at Opelika, testified that his company succeeded to the business of the American Union Telegraph Company in

October, 1881, and he had been in charge of the office at Opelika ever since; that all the papers on file when he took charge of the office were sent by him to Mobile, whence, as he afterwards learned, they were shipped to New York, and there sold to a paper-mill and ground into pulp; that he had never seen said telegram, and did not know that it was among the papers so sent off and destroyed. To the admission of each part of this evidence the defendant objected and excepted.

Jno. M. Chilton, plaintiff's attorney, testified as a witness in his behalf, that he did not personally know who was the defendant's operator at Opelika in January, 1881; and he was then asked, "Was the testimony of said operator ever taken by interrogatories in this case?" The defendant objected to this question, as calling for illegal and irrelevant evidence, and excepted to the overruling of the objection. "The witness then stated, that said testimony was taken by interrogatories; that the operator at that time, Elmore Culp, according to his best recollection, resided at that time in West Point, Georgia, and affidavit was made to that effect at the time of filing interrogatories to him; that he filed the interrogatories to said Culp, and attached to them a copy of the telegram as set out in the complaint; and that said interrogatories, and the testimony of said Culp thereon, had been lost, and could not be found after diligent search." The witness further stated, that he "remembered the testimony of said Culp substantially," and that it was to this effect: "that he was the defendant's operator at Opelika on the 6th January, 1881, and received the original telegram, of which the copy attached to the interrogatories was correct, and forwarded the same by way of Montgomery; that he received from the operator at Montgomery acknowledgment of the receipt thereof, indicated by the letters O. K.; that he afterwards tried to trace said telegram, but could not trace it beyond Montgomery." The defendant moved to exclude each and every portion of this evidence from the jury, and excepted to the overruling of the motion.

The defendant asked numerous charges to the jury, and among them the following: (1.) "If the jury believe the evidence, they must find for the defendant." (2.) "If the jury believe the evidence, they can not find for the plaintiff for more than the price paid for sending the telegram." (3.) "Under the evidence in this case, Renfro Brothers were not the agents of plaintiffs, but were brokers through whom

13

[American Union Telegraph Co. v. Daughtery.]

he made his contracts, to whom he was liable for any loss he sustained, and from whom he was to receive any profits arising from his transactions in cotton with them." (4.) "Under the evidence in this case, there were no contractual relations between plaintiff and Lehman Brothers; they were not his agents or brokers, and owed him no duty to act on his telegram." (6.) "Under the evidence in this case, the right to recover special damages arising from a failure to cover any contracts which plaintiff had on hand on the 6th January, 1881, is barred by the statute of limitations of six years." (7.) "Under the evidence in this case, the plaintiff is not entitled to recover anything, except the price of the telegram, and such damages as would naturally result from a breach of the contract whereby it agreed to deliver said telegram to Lehman Brothers in New York." The court refused each of these charges as asked, and the defendant excepted to their refusal.

The assignments of error, 44 in number, embrace all the adverse rulings of the court on the pleadings and evidence, charges given, and the refusal of charges asked.

JONES & FALKNER, A. & R. B. BARNES, and GAYLORD B. CLARK, for appellant.

JNO. M. CHILTON, contra. (No briefs on file.)

CLOPTON, J.—It having appeared during the course of the trial, that the legal title to the contract was in Renfro Bros., the brokers of H. L. Daughtery, by reason of having signed, in their own names, and delivered to defendant for transmission, the telegram set forth in the complaint, an amendment making it the suit of the surviving partners of Renfro Bros. for the use of Daughtery, in whose name it was originally commenced, was proper.—*Harris v. Plant*, 31 Ala. 639. The amendment, when allowed, related to the commencement of the suit, and no new matter or claim being introduced, the statute of limitations ran only to the filing of the original complaint.—*Evans v. Richardson*, 76 Ala. 329.

As in cases of other writings, proof of the loss of a telegram is a pre-requisite to the admission of secondary evidence of its contents.—*Whilden v. Mer. & Plant. Bank*, 64 Ala. 1. Ordinarily, the declarations of the person who last had possession of a writing, are not receivable as evidence of its loss, if he be alive and in the jurisdiction of the court.

There are cases in which the declarations of a person to whom it was last traced, to the effect that he did not have the instrument, or to whom he had delivered it, have been received for the purpose of showing that the party had prosecuted a diligent search.—*Reg. v. Kenilworth*, 52 Eng. Com. Law Rep. 641. Though, as the sufficiency of the preliminary proof is for the court, it may not be necessary to preserve, the strict rule between direct and hearsay evidence, it is not so far relaxed as to admit hearsay evidence to show the fact of search, or the destruction of the writing by the declarant. 1 Wharton on Ev. § 150. It was not competent to allow the witness Purnell to testify, from information received from others, that the papers of defendant had been sent from Mobile to New York, and sold to a paper-mill.

In 1 Greenleaf on Evidence, § 163, the rule, as to proof of the testimony of a witness given on a former trial, is stated as follows: "When the testimony was given under oath, in a judicial proceeding in which the adverse litigant was a party, and when he had the power to cross-examine, and was legally called upon to do so, the great and ordinary test of truth being no longer wanting, the testimony, as given, is admitted after the decease of the witness, in any subsequent suit between the same parties. It is also received, if the witness, though not dead, be out of the jurisdiction; or can not be found, after diligent search; or is insane, or sick; or is unable to testify, or has been summoned, but appears to have been kept away by the adverse party." That the witness was examined under oath in a judicial proceeding, and that the opposite party had an opportunity, and was legally called upon to cross-examine, are essential requisites to admissibility. It sufficiently appears that the witness Culp was beyond the jurisdiction of the court; that interrogatories were filed, and an affidavit of his non-residence made, and that his answers to the interrogatories were taken; but it is not shown that his deposition was used in evidence on the former trial, nor that defendant had notice of the filing of the interrogatories, or was called upon to cross-examine.

The second plea of defendant sets up that, by the contract for the transmission of the message, defendant was not to be liable for damages from any failure to transmit or deliver, or from any error in the transmission or delivery of an unrepeated message, and, to guard against errors, would repeat any telegram for extra payment, or one-half the regular rate; and in such case, not to be liable for damages beyond fifty

times the amount received for sending and repeating the telegram; and that the telegram in question was not repeated. In *West. Un. Tel. Co. v. Way*, 83 Ala. 240, we held, that a telegraph company can not contract to be absolved from due care and diligence in the transmission and delivery of telegrams to a point of destination on its own line, or for exemption from liability for the negligence of its own agents; and that terms and conditions, similar to those set up in the plea, are limited to cases where the negligence of the company is not the cause of delay or non-delivery. The plea is defective, in failing to aver facts which bring the case within the scope of exemption.

On the former appeal in this case, the several grounds of demurrer to the complaint, now presented for consideration, except two interposed after the case was remanded, were fully considered, and held not to be well taken. The same question relating to the liability of the telegraph company for failure to transmit and deliver in due time a message in cipher, which was not explained to the operator, then presented by demurrer alone, is now raised by both demurrer and charges. The court held, when the case was formerly before us, that though the message was in cipher, and its contents or importance was not communicated to the operator, if the company received and agreed to transmit and deliver it, and failed to do so in consequence of the fault or neglect of its agents, it is liable for the damages naturally and proximately resulting therefrom; but not for damages arising from special, collateral circumstances not communicated, and in reference to which the parties are not presumed to have contracted.—*Daughtery v. Amer. Un. Tel. Co.*, 75 Ala. 168. This question was subsequently re-considered in *West. Un. Tel. Co. v. Way, supra*, and the rule declared in the former case re-affirmed. We see no reason for departure from the ruling.

But it is insisted, that defendant's prior purchase of three hundred bales of cotton, two hundred to be delivered in May, and one hundred in June, 1881, are special circumstances not communicated. The telegram, as translated, is: "Sell on account of Daughtery, to cover, 100 June, 200 May." This was a direction to cover the previous contracts of purchase of cotton to be delivered in the same months, and was equivalent to a direction to sell the cotton previously purchased. It was so construed on the former appeal, and ruled that the natural and proximate damages were the

depreciation in the market price of cotton, between the times of the direction to sell, and the actual sale a few days thereafter. All the rulings of the court, with respect to the measure of damages, are in accord with these principles, except the refusal to give the charge requested by the defendant, to the effect, that plaintiff is not entitled to recover any amount except the price of the telegram, and such damages as naturally arose from a breach of the contract. The refusal to give this charge can be justified only on the ground that the case warranted the jury in allowing exemplary damages. There is no evidence of wanton or willful negligence, or negligence so gross as to evince an entire want of care. Not being a case for the allowance of exemplary damages, plaintiff is entitled to recover only the actual damages sustained.

It is shown that Renfro Bros. were the brokers of Daughtery, and that Lehman Bros., to whom the telegram was addressed, were their correspondents, and members of the Cotton Exchange in New York. Whether Lehman Bros. were the brokers of Daughtery, or whether there were any contractual relations between them, is immaterial. The liability of the defendant is not affected by the character of their relations, or by the want of contractual relations. The several charges in reference to this question were abstract, and properly refused.

The other assignments of error have not been pressed in argument, and it is unnecessary to consider them.

Reversed and remanded.


SOMERVILLE, J., dissenting.—I dissent from so much of the opinion of a majority of the court in this case as relates to the damages recoverable for the failure to transmit and deliver cipher telegrams. I think the sound rule is to limit the measure of damages in these cases to such as are nominal, or, at most, the price paid for sending the message. The reason and authorities in support of this conclusion are fully discussed in my dissenting opinion in the *Western Union Tel. Co. v. Way*, 83 Ala. 562–565.