192 So. 261

**PICKETT v. MATTHEWS.**

**2 Div. 149.**

Supreme Court of Alabama.

Nov. 23, 1939.

Joe M. Bonner, of Camden, and Hill, Hill, Whiting & Rives, of Montgomery, for appellant.

544

B. M. Miller, of Camden, and Weil & Stakely, of Montgomery, for appellee.

FOSTER, Justice.

This is an action under the homicide statute (section 5696, Code), which gives a cause of action when death occurs as the result of the wrongful act, omission or negligence of another.

Count 1, for simple negligence, alleged that decedent was an invited guest of defendant, riding in an automobile. Count 2 was a wanton count. Count 3, for subsequent negligence, alleged that decedent was riding in an automobile operated by defendant. It did not allege whether she was a guest. But on demurrer it will be so presumed. Count 4, for subsequent negligence, alleged that decedent was an invited guest. Demurrer to counts 1, 3 and 4 was sustained, and to count 2 was overruled.

A trial on count 2 resulted in a verdict for defendant.

The demurrer to counts 1, 3 and 4 was based on the Act of September 13, 1935, page 918, as follows:

"Section 1. The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation there-

of, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle.

"Section 2. This Act shall be effective immediately upon its passage and approval."

■ A guest may be invited, called an invitee,—42 Corpus Juris 804, 65 A.L.R. 953; or may be permitted, called a licensee,—42 Corpus Juris 805, 65 A.L.R. 956. See, also, Harris v. Snider, 223 Ala. 94, 134 So. 807, and cases cited.

The argument of counsel indicates that the question which is controlling is whether the Act of 1935, supra, is constitutional in so far as it prevents the administrator of one who is a guest of another operating a motor vehicle, and who is killed due to the negligence of the defendant from maintaining an action for such wrongful death occurring subsequent to the enactment of said Act. The Act is under attack on several grounds.

### Section 13 of the Constitution.

■ That section of the Constitution provides "that every person, for an injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law." It will be noticed that this provision preserves the right to a remedy for an injury. That means that when a duty has been breached producing a legal claim for damages, such claimant cannot be denied the benefit of his claim for the absence of a remedy. But this provision does not undertake to preserve existing duties against legislative change made before the breach occurs. There can be no legal claim for damages to the person or property of any one except as it follows from the breach of a legal duty.

■ Injury mentioned in section 13, supra, is damage which results from the breach of such duty. 16 Corpus Juris Secundum, Constitutional Law, § 709, page 1496; 1 Corpus Juris Secundum, Actions, p. 1005, § 15. Whatever damage which results from doing that which is lawful is absque injuria. Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374; Parker v. Griswold, 17 Conn. 288, 42 Am.Dec. 739. In the Ickes case, supra, it is said [302 U.S. 464, 58 S.Ct. 303, 82 L.Ed. 374]: " 'It is an ancient maxim, that a damage to one, without an injury in this sense (damnum absque injuria), does not

lay the foundation of an action; because, if the act complained of does not violate any of his legal rights, it is obvious, that he has no cause to complain. * * * Want of right and want of remedy are justly said to be reciprocal. Where therefore there has been a violation of a right, the person injured is entitled to an action.' Parker v. Griswold, 17 Conn. 288, 302, 303, 42 Am.Dec. 739. The converse is equally true, that where, although there is damage, there is no violation of a right no action can be maintained." See, also, Alabama Power Co. v. Guntersville, 235 Ala. 136, 177 So. 332, 114 A.L.R. 181.

■ Undoubtedly the right to the remedy must remain and cannot be curtailed after the injury has occurred and right of action vested, regardless of the source of the duty which was breached, provided it remained in existence when the breach occurred. 16 Corpus Juris Secundum, Constitutional Law, p. 1499, § 710. This includes such items of damages as were legally subject to recovery at the time of the breach. Comer v. Advertiser Co., 172 Ala. 613, 55 So. 195; Marion v. Davis, 217 Ala. 16, 114 So. 357, 55 A.L.R. 171.

But section 13, supra, does not in language, nor intent, prevent the legislature from changing a rule of duty to apply to transactions which may occur thereafter. If there exists any such prohibition it must be found elsewhere in the Constitution.

Sections 1, 6, 22, State, Constitution; Amendment 14, Federal Constitution, U.S. C.A.:

These taken together guarantee the equal protection of the laws, protect persons as to their inalienable rights; prohibit one from being deprived of his inalienable rights without due process; and prohibit irrevocable or exclusive grants of special privileges or immunities.

It is claimed that by those principles the legislature cannot legalize a negligent injury to one's person or property, thereby changing the rule of duty not to cause damage by a negligent act, whether that duty is a creature of the common law or statute. It is thought that to do so deprives one of "life, liberty, or property" without due process (section 6, Constitution), because such rights are inalienable under section 1, and create a special privilege under section 22, and violate the equal protection of the Fourteenth Amendment.

■ The duty to use due care not to harm the person or property of another is of common law origin. It is therefore a right of property or of life and liberty safeguarded by the due process and other features of the Constitution, unless they yield to some power recognized to be superior in respect to the situation.

■ The police power sometimes is superior to such personal and property rights. They not infrequently yield to the general welfare. Property itself is sometimes forfeited to the State when the legislature finds it necessary to the police protection of the people. Maples v. State, 203 Ala. 153, 82 So. 183.

■ It is said to be well settled that the abolition of old rights recognized by the common law violates no such general features of a constitution, when such abolition is to attain a permissible legislative object. Silver v. Silver, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221, 65 A.L.R. 939; Gones v. Fisher, 286 Ill. 606, 122 N.E. 95, 19 A.L.R. 760.

In enacting this law and changing a common law duty, did the Legislature have a permissible object? We turn to the police power for such authority.

■ In State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283, it is said that this power casts on the legislature the peculiar function of ascertaining and determining when the welfare of the people needs its exercise, that it is not paramount to the Constitution, yet its exercise is never interfered with unless plainly in conflict with the higher law.

This is illustrated in the right to legislate in respect to domestic relations and the social affairs of men. Under this principle acts which abolish the common law actions for breach of promise, for disrupting the marriage relations, as well as other actions having the same aim, have been upheld. Fearon v. Treanor, 272 N.Y. 268, 5 N.E.2d 815, 109 A.L.R. 1229.

The right thus to legislate in the interest of the general welfare is illustrated also in the case of Western Union Tel. Co. v. Priester, 276 U.S. 252, 48 S.Ct. 234, 235, 72 L.Ed. 555. In that case it was held that federal legislation, approving a rule which limited the recovery for negligence in sending an unrepeated telegram, to the amount of the service charges paid, even though the negligence was gross, should be upheld against such an attack. The court observed: "What had previously been a matter of common-law liability, with such contractual restrictions as the states might permit, then became the subject of federal legislation to secure reasonable and just rates for all without undue preference or advantage to any." This decision reversed the Court of Appeals of Alabama, 21 Ala. App. 587, 111 So. 199, and this Court, 215 Ala. 435, 111 So. 200, which held in that case that such legislation, even with the consent of the sender, could not absolve the company from its common law liability for gross negligence. Ex parte Priester, 212 Ala. 271, 102 So. 376; American Union Telegraph Co. v. Daughtery, 89 Ala. 191, 7 So. 660.

This related to legislation by Congress affecting interstate commerce. Congress has no general police power, but as to interstate commerce its power has been held to be governed by the principles which apply to the state's police power. United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778 (5), 82 L.Ed. 1234.

■ The Priester case, supra, is significant in preserving by the police power the right of the State, in the interest of the general welfare, to change the rule of common law duty even though such change deprives one of a claim for personal or property damage. Many states have enacted legislation of the sort here being considered. Some denied liability to a guest for a wilful hurt. They were held unconstitutional. See Stewart v. Houk, 127 Or. 589, 271 P. 998, 272 P. 893, 61 A.L.R. 1236. But a later statute relieving the operator from negligence only was upheld. Perozzi v. Ganiere, 149 Or. 330, 40 P.2d 1009. The same occurred in Delaware. Coleman v. Rhodes, 35 Del. 120, 5 W.W. Harr. 120, 159 A. 649; Gallegher v. Davis, 7 W.W.Harr. 380, 183 A. 620.

The note in 111 A.L.R. 1012 gives Kentucky as the only state in which such an act has been held unconstitutional, citing Ludwig v. Johnson, 243 Ky. 533, 49 S.W.2d 347, and Van Galder v. Foster, 243 Ky. 543, 49 S.W.2d 352. But in that state the homicide act is incorporated in the constitution. The court held that it also protected injuries not resulting in death, since another provision prohibited the limitation of damages for injuries which may or may not cause death. The police power of state has been generally thought to be sufficient authority to support such

legislation, though in abrogation of a common law duty.

The insistence is made that the Act violates the Fourteenth Amendment to the Federal Constitution, and the due process clause of the State Constitution, that it makes an arbitrary ill-founded classification, and therefore denies the equal protection of the laws. It is thought that our case of Birmingham-Tuscaloosa Ry. & Utilities Co. v. Carpenter, 194 Ala. 141, 69 So. 626, and those soon thereafter decided on its authority are here controlling.

That case was dealing with an act by which the negligence of the operator of a motor vehicle was imputed to an occupant riding in it, who was not a passenger paying fare on a vehicle regularly used for public hire. The Court held it to be an unwarranted and unjust discrimination against persons riding in motor vehicles, because it does not reach those riding in any other kind of vehicle under similar terms and conditions. We have judicial knowledge of the fact that in 1915, when that opinion was written, the highways were not infested with a hoard of "hitchhikers" seeking, and many obtaining, a free ride from operators of a motor vehicle. The court dockets did not abound with cases by them for damages for negligent operation. But, as was observed in State ex rel. Wilkinson v. Murphy, supra, [237 Ala. 332, 186 So. 496, 121 A.L.R. 283], "Time moves on, and government takes account of the measured step of progress for the application of the police powers to meet new public needs." The court was then dealing with intoxicating liquors, as to which the policy of the State's power was entirely changed by subsequent events. The other states have found little difficulty in sustaining such an act when considered in the light of changed conditions.

Moreover when the United States Supreme Court construes the Federal Constitution and its application to a given situation, it is controlling on us insofar as that constitution is concerned. When we construe similar features of the State Constitution as applicable to the same situation the decision of the United States court, though not controlling on us should be persuasive. A different conclusion would produce much confusion and instability in legislative effectiveness.

That court in Silver v. Silver, supra [280 U.S. 117, 50 S.Ct. 59, 74 L.Ed. 221, 65

A.L.R. 939], in this connection sustained an act similar to the one here under consideration against an attack of inequality under the Fourteenth Amendment, and in argument observed: "in this day of almost universal highway transportation by motorcar, we cannot say that abuses originating in the multiplicity of suits growing out of the gratuitous carriage of passengers in automobiles do not present so conspicuous an example of what the Legislature may regard as an evil, as to justify legislation aimed at it, even though some abuses may not be hit."

But it is argued that the Act in question does not afford equal protection because the guest is deprived of a right of damages from subsequent negligence which still exists at the suit of a trespasser. There is sufficient difference between a guest and a trespasser to make of them separate classes in prescribing police regulations.

It is said in Silver v. Silver, supra, that, granted that it is appropriate to make separate regulations for guests, "there is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the Legislature must be held rigidly to the choice of regulating all or none. * * * It is enough that the present statute strikes at the evil where it is felt and reaches the class of cases where it most frequently occurs." And in United States v. Carolene Products Co., 304 U.S. 144 (9), 58 S.Ct. 778, 783, 82 L.Ed. 1234, it is said, "A Legislature may hit at an abuse which it has found, even though it has failed to strike at another."

The Legislature was prescribing rules applicable to guests, not for the moment considering those applicable to other classes of passengers. The evil of trespassing on motor vehicles for transportation may be known to be so rare as not to command immediate attention. Whereas the evil is felt as to the class of guests not paying a fare. One needs regulation as the legislature thinks, the other may not at the present time.

We need not consider the thought of whether, when one voluntarily places himself in or on a motor vehicle as a trespasser for his transportation without permission express or implied, he should be held to the assumption of risks not less onerous than if the carrier had noticed his presence and consented to the carriage, expressly or impliedly. By doing so, he seeks free trans-

portation. Whether he is a trespasser or a licensee does not then depend upon his volition, but .the act or omission of the carrier. Can he be heard to say under such circumstances that he is a trespasser, and to obtain thereby some special benefit?

We have not rested our conclusion on that basis, however, and it is not necessary to rest it on the further consideration that the homicide act is a creature of the legislature, not an old common law right referred to in Silver v. Silver, supra, and other authorities as one protected by the due process clause. See United States Cast Iron Pipe & Foundry Co. v. Sullivan, 5 Cir., 3 F.2d 794, certiorari denied 268 U.S. 696, 45 S.Ct. 514, 69 L.Ed. 1162.

We have placed our approval of the Act on the broad police power of the State to remedy a current evil. But, as applied to the particular action here involved, the argument is not without reason that the homicide act being a statutory grant (Kennedy v. Davis, 171 Ala. 609, 55 So. 104, Ann.Cas.1913B, 225) could at any time be withdrawn altogether and a fortiori modified except .as such repeal or modification may affect rights which have become vested. 6 R.C.L. 157, section 156; 11 Amer.Jur. 900, section 196.

Subject to the rules which we have here declared, there can be no right to have an existing statute continue in effect without repeal or modification, except as to a cause which has accrued and vested. 11 Amer.Jur. 1200; 16 Corpus Juris Secundum Constitutional Law, p. 646, § 223; Samples v. State, 19 Ala.App. 478, 98 So. 211, certiorari denied with opinion 210 Ala. 544, 98 So. 803.

In this connection appellant cites 16 Corpus Juris Secundum, Constitutional Law, § 709, p. 1497, which deals with the abolition of certain remedies, including sometimes statutory remedies. But the homicide statute is not the creation of a remedy, but of a cause of action for death by wrongful act, which did not exist at common law. If the cause of action exists, the remedy is otherwise provided and continues in full force. Death by wrongful act and personal injury not causing death are separate and distinct causes of action. Bruce v. Collier, 221 Ala. 22, 127 So. 553.

. Again, since it does not appear that decedent was not an adult, capable of contracting, it is argued that, after the enactment of the law, by voluntarily accepting gratuitous transportation and in consideration thereof, she voluntarily assumed the risk provided by this Act, though it be otherwise ineffective. The subject of the power of an adult to contract so as to relieve another of the consequence of injuring him through negligence, has had much consideration in the courts and by text-writers. See 2 Contracts, American Law Institute, Restatement, §§ 574, 575; 13 Corpus Juris 491, section 437; Ex parte Mobile Light & R. R. Co., 211 Ala. 525, 101 So. 177, 34 A.L.R. 921.

But if the Act was void because it was in violation of the Constitution, it is doubtful if it can be held that its terms were thereby impliedly accepted. For knowing it to be ineffectual, it may be presumed that it was ignored, in the absence of an express assent to it.

The principles which we have discussed are controlling on all the assignments of error. The rulings of the court accord with our views, and the judgment is therefore affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.