315 So.2d 570

**John K. BEASLEY and Jerry K. Beasley, a minor who sues by and through his father and next friend, John K. Beasley**

**v.**

**Gregory BOZEMAN, a minor, and Lynn Bozeman.**

**SC 1134.**

Supreme Court of Alabama.

July 10, 1975.

Jordan, Heard & Fuller, Montgomery, for appellants.

Thomas H. Keene, Montgomery, for appellees.

MADDOX, Justice.

The sole question for decision is the constitutionality of Alabama's "Guest Statute," Title 36, § 95, Code of Alabama 1940 (Recomp. 1958), which reads as follows:

"Liable only for willful or wanton misconduct.—The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of ·such operator, owner or person responsible for the operation of said motor vehicle."

▇▇▇ Appellant argues that our guest statute violates Sections 1, 6, 13 and 22 of the State Constitution and Amendment 14 of the Federal Constitution. These identical claims were made when the constitutionality of Alabama's guest statute was upheld in this Court's case of *Pickett v. Matthews,* 238 Ala. 542, 192 So. 261 (1939).

We are aware that some courts have held their guest statutes to be unconstitutional. Cf. *Brown v. Merlo,* 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973); *Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974); *Henry v. Bauder,* 213 Kan. 751, 518 P.2d 362 (1974); *Johnson v. Hassett,* 217 N.W.2d 771 (N.D.1974). The Supreme Court of the United States has upheld the right of a state to pass a guest law. See *Silver v. Silver,* 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929).

Several other states besides Alabama have recently upheld their individual guest statutes. See *Tisko v. Harrison,* 500 S.W. 2d 565 (Tex.Civ.App.1973); *Richardson v. Hansen,* 527 P.2d 536 (Colo.1974); *Justice v. Gatchell,* 325 A.2d 97 (Del.Supr. 1974); *Keasling v. Thompson,* 217 N.W.2d 687 (Iowa 1974); *Duerst v. Limbocker,*

525 P.2d 99 (Or.1974); *Cannon v. Oviatt,* 520 P.2d 883 (Utah, 1974); *Botsch v. Reisdorff,* 193 Neb. 165, 226 N.W.2d 121 (1975); *Behrns v. Burke,* 229 N.W.2d 86 (S.D.1975).

We are of the opinion, that under the distribution of powers section of our State Constitution, it is within the province of the Legislature to ascertain and determine when the welfare of the people might require that the guest statute should be repealed. The Legislature's power should not be interfered with unless it is exercised in a manner which plainly conflicts with some higher law. *Pickett v. Matthews,* supra.

The judgment of the circuit court is due to be affirmed.

Since we affirm the case, it is unnecessary for us to discuss the point raised by the appellee that the constitutional question was not adequately raised in the trial court.

Affirmed.

MERRILL, BLOODWORTH, ALMON and SHORES, JJ., concur.

HEFLIN, C. J., concurs in the result.

JONES, J., concurs specially, with which FAULKNER and EMBRY, JJ., concur.

JONES, Justice (concurring specially).

Because my concurrence with this opinion represents a change of mind, I am constrained to comment on the reasoning process which led to this reversal in my thinking. It is the discipline of this office, and fortunately so, that initial impulses do not always prevail against thorough research and more deliberate consideration. Especially do we find this to be true when we commit to writing the rationale for our conclusions, which is frequently practiced in difficult cases although another of the Justices has been assigned to prepare the

opinion. It is not too uncommon to find that what will "think out" will not "write down"; thus the expression in judicial circles, "It just won't *write* that way."

My initial compulsion was to strike down the guest statute as bad law. While I have not changed my mind about the quality of the Act, I have concluded there is no legal basis on which this Court could hold the statute invalid. To disagree with the public policy expressed by the legislature in the guest statute is easy. Indeed, I have always believed that the "hitch-hiker" theory, which was allegedly the basis of the public policy expressed therein, was but a guise and a ruse for the real reason for its passage—the protection of corporate insurors and other vested interests. Had I been a member of the legislature then, I would have voted against its passage—or now, I would vote for its repeal. The case law development, particularly those decisions which seek to define the status of guests versus other passengers, of itself shows the folly and lack of wisdom of such a law.

On the other hand, I believe strongly in the wisdom of the separation of powers doctrine which is the foundation of our system of government, and the Court is powerless to strike down as invalid a legislative act unless such act is constitutionally prohibited or otherwise violative of constitutional proscriptions. The legislative process, through elective representatives, with all of its faults, and its tendency to be unduly influenced by pressure groups, is the best method yet derived by man for the enactment of laws expressive of the public policy of its people. (I would add parenthetically: My faith in this process further leads me to believe that a legislature sensitive to the will of the people it represents will now exercise its prerogative to repeal this inherently bad law.)

Having said this, however, I would hasten to add that this does not mean that this Court is not a lawmaking tribunal. The common law is still very much alive in this state; and I believe it is the proper function of this Court, in the context of litigated issues, to formulate and announce through written opinions rules of law in areas which fall outside legislative prerogatories or in areas where those prerogatories have not been legislatively exercised. This includes, in my opinion, reexamination of existing case law; and, with due regard to the principle of stare decisis, to overrule prior decisions when we are convinced beyond peradventure of doubt that such decisions were wrong when decided or that time has affected such change as to require a change in the law.

Stare decisis is a noble principle, but it is not case-hardened res adjudicata. Unlike the Killy-loo bird, who insists on flying backward, the law must be interested in where it is going as well as where it has been. This judicial reexamination of case law likewise should include statutory interpretation so as to insure that the legislative intent is given full effect. I believe there is a broad distinction between the Court's usurpation of legislative prerogatives—which is forbidden—and the interpretation of legislative intent—which is a legitimate judicial function.

The complementary statutory enactment process by the legislature on the one hand, and the creative judicial process on the other, was wisely put into perspective by Justice Cardozo in "The Growth of the Law" (pp. 131–134):

"There are those who, dismayed by the difficulties of the judicial process when it becomes a creative agency, would keep it to the sphere of imitative reproduction, and leave creation to the statutes. I am not sure but that I should be prepared to join them if statutes had proved adequate in the past to the bearing of such a burden, or gave promise of being adequate within any future now in sight. I have been surprised to see how many partisans the notion of a separation of

powers rigid and perpetual—the judges the interpreters, the legislature the creator—is able even in our day to muster at the bar. Some months ago the New York Law Journal published letters of its readers, some in praise, some in criticism, of a decision recently announced. The critics, or some of them, went upon the theory that the rule of stare decisis was imbedded in the constitution, and that judges, when they departed from it, were usurpers, though the precedent ignored was as mouldy as the grave from which counsel had brought it forth to face the light of a new age. Stare decisis is not in the constitution, but I should be half ready to put it there, and to add thereto the requirement of mechanical and literal reproduction, if only it were true that legislation is a sufficient agency of growth. The centuries, if they have proved anything, have proved the need of something more. These tentative and uncertain gropings may be deplored, but they are inevitable, none the less, if we are not to rush blindly into darkness. Unique situations can never have their answers ready made as in the complete letter-writing guides or the manuals of the art of conversation. Justice is not to be taken by storm. She is to be wooed by slow advances. Substitute statute for decision, and you shift the center of authority, but add no quota of inspired wisdom. If legislation is to take the place of the creative action of the courts, a legislative committee must stand back of us at every session, a sort of supercourt itself. No guarantee is given us that a choice thus made will be wiser than our own, yet its form will give it a rigidity that will make retreat or compromise impossible. We shall be exchanging a process of trial and error at the hands of judges who make it the business of their lives for a process of trial and error at the hands of a legislative committee who will give it such spare moments as they can find amid multifarious demands.

Even if we could believe that the amateurs would be wiser than the professionals, their remedy would be prescribed too late to help the patient whose disease they had observed. Administered to another, without reckoning a change of symptoms, it might do more harm than good. I do not mean to depreciate unduly the value of the statute as an instrument of reform. Legislation can eradicate a cancer, right some hoary wrong, correct some definitely established evil, which defies the feebler remedies, the distinctions and the fictions, familiar to the judicial process. Legislation, too, can sum up at times and simplify the conclusions reached by courts, and give them new validity. Even then, its relief is provisional and temporary. The cycle is unending."

Here, appellants ingeniously argue that the guest statute violates the equal protection injunction of the state and federal constitutions by not imposing on the host of a social guest in an automobile the same duty of due care as imposed on the host of other social guests in our society. Appellant approaches this contention forthrightly, recognizing that line of Alabama cases dealing with premises defects which treat the guest as a mere licensee and imposes on the host the duty only not to willfully or wantonly injure.

Appellant reasons that the parallel burden of proving wantonness holds only where the conduct resulting in injury is passive rather than active negligence. The cases tend to bear out appellant's latter premise; and, even if they did not, I would have no reluctance, under the thesis discussed above, to reexamine and reconsider, in the proper adversary context, our judge-made laws of premises liability.

At any rate, assuming the validity of appellant's contention between the status of automobile guests and nonautomobile guests, I am unable to conclude that this classification is unreasonable or otherwise constitutionally proscribed. Here, again, I

would emphasize that I see no good reason for such distinction, but this is a personal opinion which does not constitute a legal basis for a declaration by this Court of constitutional invalidity.

FAULKNER and EMBRY, JJ., concur.