The Scotts challenged the constitutionality of the statute on the grounds that it violated the Equal Protection and Due Process clauses of the United States and Alabama Constitutions, as well as Ala. Const., Art. I, § 13. I would hold that the *Page 1347 
statute violates § 13; and thus, would reverse the judgment and remand the cause for trial.
A synthesis of earlier opinions construing § 13 establishes: If the legislative enactment abolishes or infringes on a common law right, a substantive right, or a fundamental right, the legislation will survive constitutional scrutiny only if:
 1) The right is voluntarily relinquished for equivalent benefits;
 2) the statute eradicates a perceived social evil, or;
 3) the cause of action is no longer of benefit to society.
Second, if the legislative enactment merely alters a common law right or remedy, or does not infringe on a fundamental right, the legislation will be upheld unless:
 1) the cause of action has already accrued or "vested;" or
 2) the legislation is not rationally related to a reasonable state objective.
Section 13 is contained in that portion of the Constitution entitled "Declaration of Rights." The Declaration of Rights, like the Bill of Rights, denotes those protections guaranteed to individuals against intrusions of the legislature. This provision had its origins in the Magna Charta and was a restriction upon royal power. See Ex parte Pollard, 40 Ala. 77
(1866); 2 Coke's Institute, p. 55. Thus § 13 was perceived by the framers of our Constitution as a fundamental right.
It is a basic tenet of statutory construction that a provision should be interpreted to give effect to every portion of the enactment. In order to effectuate the provisions of § 13, the powers of the legislature cannot be read so broadly that the "very rights the section was intended to protect" are left meaningless. Fireman's Fund American Insurance Co. v.Coleman, 394 So.2d 334, 351 (Ala. 1981). Nevertheless, there must be. a guard against an interpretation that may "effectively preclude governmental action in areas of crucial public concern." The legislature has plenary powers to regulate matters concerning the health and welfare of its citizens, as well as other matters not constitutionally proscribed.
As early as 1866, this Court recognized a distinction between complete abolition of a cause of action and mere alteration of it. The Court stated, "the legislature may, consistently with the constitution, alter, enlarge, modify, or confer a remedy for existing rights." Ex parte Pollard, 40 Ala. 77 (1866) (upholding constitutionality of "stay law"). "If the State legislature should abolish all remedies, and provide none, or should provide such as would barely leave the remedy worthpursuing, then this court, in my judgment, would be bound, upon principle and authority, to hold such act unconstitutional and void." Id., (Bird, J., concurring). "The essence of the provision is . . . that an individual is entitled to a remedy
for his injuries. Accordingly, a legislative enactment should withstand a § 13 attack if some remedy is provided a plaintiff for his injuries." Fireman's Fund American Insurance Co. v.Coleman, 394 So.2d at 355. (Beatty, J., dissenting).
A thorough examination of the cases interpreting § 13 shows that when the legislature has attempted to completely abolish a remedy for a protected right the statute must either eradicate a social evil or provide a quid pro quo. See Fireman's FundAmerican Insurance Co. v. Coleman, 394 So.2d 334 (Ala. 1981);Grantham v. Denke, 359 So.2d 785 (Ala. 1978); Ivey v. DixonInvestment Co., 283 Ala. 590, 219 So.2d 639 (1969). Nevertheless, legislation which provides procedural prerequisites to bringing suits, or limits, modifies or merely alters a remedy in some way is valid, subject to a "vested rights" limitation. See Mayo v. Rouselle Corp., 375 So.2d 449
(Ala. 1979); Pickett v. Matthews, 238 Ala. 542, 192 So. 261
(1939); Swann v. Kidd, 79 Ala. 431 (1885); Martin's Executrixv. Martin, 25 Ala. 201 (1854).
Two basic questions are raised when interpreting § 13. First, what rights are protected from legislative abolishment? Second, when does a legislative enactment so restrict a remedy that an otherwise protected right is not "worth pursuing" and thus is effectively abolished? *Page 1348 
The majority suggest that § 13 protects only common law rights that existed at the time the constitutional provision was enacted. This interpretation ignores the nature of the common law. The common law is constantly changing. Surely, the legislature did not intend to restrict the rights of Alabama citizens only to those rights which existed over 200 years ago. If this were the case, many advancements in the law would never have occurred. Furthermore, the language of the provision suggests no such limitation. This "common law right" interpretation is a judicially engrafted limitation which ignores the dynamic nature of societal standards from whichfundamental rights evolve.
Protecting common law rights is similar to the Seventh Amendment's preservation of the right to jury trial in "actions at law." See U.S. Const., Amend. VII. The right to trial by jury has not been frozen to give the right only in those cases which were tried at law in 1791. See U.S. Const., Amend. VII. The right to trial by jury exists in all actions in which there ispresently an "adequate remedy at law." See Beacon Theatres v.Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1958);Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44
(1961). A remedy by due process of law for injuries to a person is not limited to remedies that existed in the 1800's. This right is part of our "fundamental law," just as the right to trial by jury is. See Martin's Executrix v. Martin, 25 Ala. 201
(1854).
Nonetheless, viewing § 13 as limited to actions which existed at common law is a convenient rule of thumb for review and a good starting point. But, § 13 also protects other fundamentalor substantial rights; and these rights may find their sourcein either the legislative or judicial process, or in societalcustoms and usages. Hale, The History of the Common Law ofEngland, 44.45 (Grey ed. 1971); H.F. Stone, The Common Law inthe United States, 50 Harv.L.Rev. 4, 12-14 (1936) (footnotes omitted). See also Landis, Statutes and the Sources of Law,Harvard Legal Essays, 213 (1934); Pound, Common Law andLegislation, 21 Harv.L.Rev. 383 (1908); Note, 82 Yale L.Rev. 258 (1972).
The term "fundamental right" is often used very loosely. But in this context, the term refers only to those rights which are so fundamental to an ordered society that the violation or abridgement of them would be constitutionally proscribed. Some such rights are expressly mentioned in our organic law, the written constitution, but others have been recently enunciated and afforded constitutional protection. Of the former, freedom of speech is an example, of the latter, the fundamental right to privacy is an example. See Griswold v. Connecticut,381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Thus, every fundamental and substantial right even though it may not have existed at common law, but which has become deeply embedded in our system of justice is constitutionally protected. SeeFireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334
(Ala. 1981) (Shores, J., concurring).
The converse of the principle that § 13 protection is not limited to common law actions is also true. Section 13 protection of a common law remedy may cease when "evolving mores [have] rendered those causes of action obsolete and of no benefit to society." Id. at 354. See Henley v. Rockett,243 Ala. 172, 8 So.2d 852 (1942).
In sum, the legislative power is broad and subject to only narrow scrutiny under § 13. The legislature may alter, amend, or modify any cause of action either procedurally or substantively. The enactment need only be a reasonable means of obtaining a permissible objective. See Beasley v. Bozeman,294 Ala. 288, 315 So.2d 570 (1975); Pickett v. Matthews, 238 Ala. 542,192 So. 261 (1939). The legislation also must not deny a remedy for injuries to rights which have accrued and become vested before the enactment of the legislation — a retroactivity requirement. Id.
As against a § 13 challenge, the only prohibition on the legislative power arises when an act abolishes all remedies for a common law or fundamental right. The legislation will fail under constitutional scrutiny unless: *Page 1349 
 1) The right is voluntarily relinquished by its possessor in exchange for equivalent benefits or protection;
 2) The legislation eradicates or ameliorates a perceived social evil and is thus a valid exercise of the police power; or
 3) The cause of action is obsolete and of no benefit to society.
Grantham v. Denke, 359 So.2d at 789 (Maddox, J., dissenting).
Now turning to the issue of whether § 3-5-3 (a) is constitutional. The first step in the analysis is to determine if the right to a remedy for injury or damage due to the negligence of a livestock owner is protected by § 13. In other words, is the right to sue a livestock owner a common law or fundamental right?
As early as 1844, this Court stated:
 "[T]he owner of domestic animals, not necessarily inclined to commit mischief, such as dogs, horses, c., is not liable for an injury committed by them, unless it can be shown that [1] he previously had notice of the animal's mischievous propensity; or, [2] that the injury was attributable to some neglect on his part."
Durden v. Barnett Harris, 7 Ala. 169 (1844). See Hopper v.Crocker, 17 Ala. App. 372, 85 So. 843 (1919), cert denied,204 Ala. 698, 85 So. 922 (1920); 3 J. Dooley, Modern Tort Law, §§ 37.02 and 37.05 (1977).
In Pelham v. Spears, 222 Ala. 365, 132 So. 886 (1931), the Court refused to permit recovery by an automobile owner for damages caused by a cow which had escaped. The complaint was dismissed because the plaintiff failed to aver that "the cow was of such a nature that the damage done was likely to arise from such an animal and the owner knew of its propensity." In other words, the injury must have been foreseeable and must have been proximately caused by the owner's negligence.
The Court at that time required knowledge of an animal's mischievous propensities before holding that the injury was foreseeable, because there was no rule or statute prohibiting livestock from running free, as there is today. Id. Thus, merely permitting the livestock to run free was not considered negligence because the owners had no duty to restrict their livestock. The case implicitly recognizes a cause of action for negligence of the livestock owner, but found that the complaint failed to aver that the injuries were the proximate result of the owner's action.
It is clear that at common law, the driver of a vehicle or owner had a cause of action for injuries caused by livestock if the acts of the animal's owner proximately caused the injury or if the owner knew of the animal's mischievous propensities.
The next step in the analysis is to determine if the legislature, by enacting Section 3-5-3 (a), abolished all remedies for damages caused by a known mischievous animal or by the owner's negligence. The statute prohibits recovery unless the owner "knowingly or willfully put or placed such stock upon such public highway." In Carter v. Alman, 46 Ala. App. 633,247 So.2d 676 (1971), the Court of Civil Appeals discussed the intention of the legislature in barring recovery unless the livestock are willfully placed on the highway. In an action for damages to an automobile caused by striking a cow in the road, the Court stated:
 "There was evidence that appellee often had cows out of his pasture, and that the fence was of insufficient height to properly contain his cattle. His cattle had been observed in and along the highway at other times and had been hit by automobiles.
". . . .
 "[T]he owner of the feasant beast [must have] placed or put it upon the highway with a "designed set purpose, intention, or deliberation." Evidence of negligence or gross carelessness is not enough [to establish liability under § 3-5-3 (a).]"
Clearly the effect of requiring specific intent to place livestock in the road "would barely leave the remedy worth pursuing." The standard of liability is so high, that it would be almost impossible to meet. To require an injured person to prove that a livestock owner knowingly and purposefully *Page 1350 
placed the stock in the highway leaves most injured persons with no remedy. Unlike the "guest statute," which merely imposes a more difficult burden on a guest riding in a car, §3-5-3 (a) imposes a nearly impossible burden on an injured automobile owner or driver. See Pickett v. Matthews, 238 Ala. 542,192 So. 261 (1939). Under the "guest statute," Code 1975, § 32-1-2, a driver may be liable for "wanton" misconduct. Wantonness requires that the actor have knowledge of the perilous consequences of his or her conduct and that the actor pursue the conduct in reckless disregard of the consequences,i.e., recklessness or gross carelessness. See Lankford v. Mong,283 Ala. 24, 214 So.2d 301 (1968); Couch v. Hutcherson,243 Ala. 47, 8 So.2d 580 (1942). But under § 3-5-3 (a), recklessness or gross carelessness is not sufficient — the injured party must prove intent. The low standard of care for livestock owners is actually no standard at all, and abolishes an automobile owner or driver's common law remedy for negligence.
The final determination to be made is whether the abolition of the common law cause of action eradicates a social evil or whether the cause of action was voluntarily relinquished in exchange for equivalent benefits.
The paradigmatic instance in which protected rights are relinquished in exchange for statutory benefits is the workmen's compensation statute. Under the Workmen's Compensation Act, the employee relinquishes the right to sue the employer for negligence, and instead is guaranteed a remedy regardless of the employer's "fault" in causing the employee's injury. See Grantham v. Denke, 359 So.2d at 787. In the present situation, automobile drivers, owners and passengers relinquish the right to sue the owner of livestock for injuries caused by the owner's negligence or recklessness. In exchange, the injured parties receive nothing — there are no alternative remedies or schemes for compensation.
The immunity provisions of § 3-5-3 (a) do not eradicate a perceived social evil. Obviously, the intent of the legislature in enacting the predecessor of § 3-5-3 (a), was to regulate the open range. The advent of the automobile, then considered "a dangerous instrumentality," necessitated regulation of livestock on the highway. The law prohibited owners of livestock from permitting their livestock to roam free. At the same time, the legislature gave immunity to those livestock owners, showing disfavor of the "dangerous instrumentality."
Whether the statute eradicated a social evil in 1939, I cannot say. But clearly, § 3-5-3 (a) does not eradicate a social evil today. It abolishes an action for negligence, recklessness, and for failure to secure an animal whose known mischievous propensity is to roam on highways.
 "[T]o hold a person liable for his carelessness is to make him more careful. . . . From [man's] dual capacity for human excesses springs the time-tested fault-based system of reparation for injury — its fountainhead being the imposition of duty to act prudently not to inflict injury to another, and its result being safer conditions for all of us."
Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d at 346 (Jones, J., concurring).
Judicial notice is taken that there are thousands of miles of highways in this state, and along with them, thousands of automobiles and hundreds of accidents, injuries, and deaths each year. The safety of those driving automobiles should not be jeopardized by the negligence or recklessness of livestock owners.
Parenthetically, I note that § 3-5-3 (a) is suspect under the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the Constitution. Without ruling on the issue, I see that the statute arbitrarily distinguishes between owners whose livestock damage plants, trees, shrubs, and so forth, and owners whose livestock damage automobiles and injure the passengers inside. It is questionable whether this classification is reasonably related to a permissible state objective. *Page 1351 
It is my opinion that the legislature exceeded the constitutional limits on its legislative authority by enacting § 3-5-3 (a).
JONES, EMBRY and ADAMS, JJ., concur.