581 So.2d 792 (1990)
Kim SHARPLEY
v.
SONOCO PRODUCTS COMPANY and Provident Life and Accident Insurance Company.
88-601.
Supreme Court of Alabama.
December 28, 1990.
*793 John L. Sims, Hartselle, for appellant.
Thomas R. Robinson of Lanier, Ford, Shaver & Payne, Huntsville, for appellees.
PER CURIAM.
Beginning in 1983, Baker Industries, a division of Sonoco Products Company (hereinafter "Sonoco"), employed Kim Sharpley. Sonoco is a self-insured company whose employees are covered under a group life, medical, and dental insurance policy administered by Provident Life and Accident Insurance Company (hereinafter "Provident"). A provision in that group policy provides as follows:
"Acts of Third Parties (Subrogation)
"Medical care benefits are not payable to or for a person covered under this plan when the injury or illness to the covered person occurs through the act or omission of another person. However, the Provident may elect to advance payment for medical care expenses incurred for an injury or illness in which a third party may be liable. For this to happen, the covered person must sign an agreement with the Provident to pay the Provident in full any sums advanced to cover such medical expenses from the judgment or settlement he or she receives."
On March 31, 1986, Sharpley was involved in an automobile accident allegedly caused by a third person. As a result of injuries sustained in the accident, Sharpley was hospitalized in the Cullman Medical Center for approximately three months. On July 15, 1986, Sharpley received $25,000 from the third party's insurer as a settlement of any claim that Sharpley may have had against the third party arising out of the automobile accident. Sharpley did not use any of the $25,000 to pay the $15,550.15 medical expenses he had incurred as a result of the accident.
On July 25, 1986, Sharpley signed a subrogation agreement that he received from Provident, as required under the above-quoted policy provision. That agreement provided:
"If Provident (as plan administrator for Sonoco Products Company) advances benefits to me [Sharpley] or on my behalf for this injury or illness, I will repay *794 Sonoco Products Company in full any sums advanced to cover such expenses from the judgment or settlement I or my dependent receives. I further agree that provident on behalf of Sonoco Products Company may file this instrument as a lien with the person whose act caused injured [sic], his agent, the court, or my attorney."
In August 1986, Provident paid the $15,550.15 in medical expenses for Sharpley pursuant to the subrogation agreement. When Provident became aware that Sharpley had recovered $25,000 from the tort-feasor, it tried to collect $15,550.15 from Sharpley. Sharpley refused to reimburse Provident. Provident then brought this suit to recover the medical expenses that it had paid on behalf of Sharpley. After an ore tenus hearing, the trial court entered judgment in favor of Provident in the amount of $15,550.15. Sharpley appealed. We reverse and remand.
Sharpley argues that he is not obligated to reimburse Provident because he collected the settlement from the tort-feasor before he signed the subrogation agreement. We find this argument unpersuasive. In Powell v. Blue Cross & Blue Shield of Alabama, 581 So.2d 772 (Ala. 1990), we discussed at length the equitable nature of subrogation. In this case, those equitable considerations would not allow Sharpley to be unjustly enriched by retaining all of the proceeds paid to him or on his behalf due to the accident, if those proceeds exceed the amount of his loss.
In Powell we stated that "[t]he equitable considerations that are the underpinnings of subrogation are (1) that the insured should not recover twice for a single injury, and (2) that the insurer should be reimbursed for payments it made that, in fairness, should be borne by the wrongdoer." 581 So.2d at 774. (Citing International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163, 165 (Ala.1989.))
In this case, the equitable underpinnings for allowing subrogation are readily apparent. Provident paid Sharpley's medical expenses only after Sharpley agreed to reimburse Provident from "any sums advanced to cover such expenses from the judgment or settlement I or my dependent receives." Sharpley can not now deny Provident its right to subrogation merely because he was reimbursed from the tort-feasor before he signed the subrogation agreement. Sharpley was free to refuse to sign the subrogation agreement, in which case he could have paid his expenses out of the settlement proceeds recovered from the tort-feasor. Instead, Sharpley chose to sign the subrogation agreement and have Provident pay his medical expenses.
The policy that Provident administers clearly sets forth its right to subrogation in cases where a third party is involved. In addition, the agreement that Sharpley signed encompasses any reimbursement received as a result of the accident that caused the injury and as to which Provident paid Sharpley's medical expenses. The subrogation agreement does not limit Provident's right to subrogation to only those proceeds collected after the subrogation agreement was signed. Therefore, we hold that Provident's right to subrogation was preserved in this case and that the right of subrogation is not limited to only those proceeds collected after Sharpley signed the subrogation agreement.
However, as we held in Powell, the insurer's right to subrogation does not arise until after the insured has been made whole for his loss. In this case, the record is not sufficient for this Court to determine the full extent of Sharpley's loss due to the accident. On remand the trial court should determine the extent of Sharpley's loss, consistent with our opinion in Powell. Once the extent of Sharpley's loss is found, then the trial court can determine whether he recovered a sum sufficient to make him whole. Any amount that Sharpley collected over the amount that would make him whole is subject to Provident's right to subrogation. Therefore, this case is remanded for proceedings consistent with this Court's holding in Powell.
REVERSED AND REMANDED WITH INSTRUCTIONS.
*795 HORNSBY, C.J., and JONES, SHORES and ADAMS, JJ., concur.
KENNEDY, J., concurs in the result.
STEAGALL, J., concurs in part and dissents in part.
MADDOX and HOUSTON, JJ., dissent.
STEAGALL, Justice (concurring in part and dissenting in part).
I concur with that part of the main opinion that preserves Provident's right to subrogation. I dissent, however, from that portion applying the holding of Powell v. Blue Cross & Blue Shield, 581 So.2d 772 (Ala.1990).
MADDOX, Justice (dissenting).
The repayment agreement executed by the insured in this case reads:
"I agree that if Provident (as plan administrator for Sonoco Products Company) advances benefits to me or on my behalf for this injury or illness, I will repay Sonoco Products Company in full any sums advanced to cover such expenses from the judgment or settlement I or my dependent receives. I further agree that Provident on behalf of Sonoco Products Company may file this instrument as a lien with the person [whose] act caused this injury, his agent, the court, or my attorney." (Emphasis added.)
It is undisputed that at the time Sharpley signed this agreement he had already settled with the tort-feasor and had already received the settlement proceeds.
Because Sharpley had already received the settlement proceeds, and because the agreement states that he is to pay out of any settlement any proceeds he "receives," I thought, at first by applying contract principles, that Sharpley should win because the contract would be construed most strongly against the drafter of the agreement, Provident. In fact, that is the argument Sharpley made on appeal. I am now convinced, however, that the Court is correct in holding that Sharpley's arguments in this regard are "unpersuasive." It is clear that Sharpley knew that Provident would not pay his hospital bills for him unless he executed the agreement. I cannot agree, however, that the case should be remanded to the trial court.
Although this was a group policy, the policy clause dealing with "Acts of Third Parties (Subrogation)" reads as follows:
"Medical care benefits are not payable to or for a person covered under this plan when the injury or illness to the covered person occurs through the act or omission of another person. However, the Provident may elect to advance payment for medical care expenses incurred for an injury or illness in which a third party may be liable. For this to happen, the covered person must sign an agreement with the Provident to pay the Provident in full any sums advanced to cover such medical expenses from the judgment or settlement he or she receives."
In International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163 (Ala.1989), this Court said that "[w]e are of the opinion that the better reasoned rule, one followed in a number of jurisdictions, is that equitable principles apply to all instances of subrogation except when the contract expressly provides otherwise." (Emphasis added.)
In this case, the policy provision expressly provided that medical care benefits were not payable if the injury was caused by a third party, but that the company could advance such benefits provided the insured signed a repayment agreement, which Sharpley did in this case.
I recognize that this Court has held that equitable principles must be applied to every contract of this nature, Powell v. Blue Cross & Blue Shield, 581 So.2d 772 (Ala. 1990), but I dissented in Powell, and the facts of this case show exactly the reasons why I dissented in Powell. One of the basic rights guaranteed to all citizens is the right to freely contract. While the right of insurance companies to sell insurance is highly regulated, the policy in this case specifically provided that "[m]edical care benefits are not payable to or for a person covered under this plan when the injury or illness to the covered person occurs *796 through the act or omission of another person." Although the policy provided that the company "[could] elect to advance payment for medical care expenses incurred" in such instances, the policy specifically provided that a person would have to sign a repayment agreement, which Sharpley did.
I do not think that equitable principles of subrogation come into play in this case; in fact, I think that the Court, by writing equitable principles into this repayment agreement, essentially rewrites the contract, and thereby impairs its obligations, which both the Alabama and United States Constitutions forbid. See my dissent in Powell.
Because I believe that the agreements made by and between the insurer and the insured in this case are clear, and because the evidence clearly shows that had Sharpley not executed the repayment agreement, Provident would not have paid his hospital debt, I believe that the trial court was correct in this case. Consequently, I must respectfully dissent for these reasons and for all of the reasons that I expressed in my dissent in Powell.
HOUSTON, J., concurs.
HOUSTON, Justice (dissenting).
I concur with Justice Maddox; see also my dissenting opinion in Powell v. Blue Cross & Blue Shield, 581 So.2d 772 (Ala. 1990).