581 So.2d 796 (1990)
Richard Phillip McKLEROY and Bobby McKleroy
v.
Thurman WILSON, Jr., and Wiley Sanders Truck Lines, Inc.
88-1184.
Supreme Court of Alabama.
December 28, 1990.
*797 William W. Smith, James S. Witcher, Jr. and Barry W. Hair of Hogan, Smith, Alspaugh, Samples & Pratt, Birmingham, for appellants.
Thomas R. DeBray of Kaufman, Rothfeder & Blitz, Montgomery, N.J. Cevera of Cevera & Ralph, Troy, for appellees.
PER CURIAM.
On November 15, 1987, Richard Phillip McKleroy was involved in an automobile accident allegedly caused by Thurman Wilson, Jr. At the time of the accident McKleroy was employed by Wiley Sanders Truck Lines, Incorporated (hereinafter "Sanders"). As part of his employment, McKleroy was covered under an Employee Health Benefit Plan (hereinafter "Plan") that is self-funded by Sanders and administered by National Benefit Administrators (hereinafter "Administrators"). Sanders alleges that pursuant to the Plan it paid $267,749.32 in medical expenses on behalf of McKleroy as a result of his injuries received in the accident with Wilson. The Plan contains the following provision:
"Subrogation
"National Benefit Administrators may pay benefits for an illness or injury for which some other person is responsible. If you seek to recover your expenses from the person, National Benefit Administrators is given the right to recover its payments on your behalf from the other person. If settlement is made to you then National Benefit Administrators would recover the payment from you."
On March 8, 1988, McKleroy and his wife, Bobby, filed suit against Wilson, alleging that he had caused the accident. In their complaint, Richard McKleroy asserted damages for bodily injuries, pain and suffering, loss of employment, loss of future wages, and other damages. Bobby McKleroy sought damages for loss of consortium. The plaintiffs did not seek any recovery for medical expenses, which have been paid by Sanders. Sanders moved to intervene as a plaintiff and alleged that, because it had paid McKleroy's medical expenses, it was subrogated to any recovery *798 awarded to McKleroy in his suit against Wilson.
The trial court allowed Sanders to intervene as a plaintiff, holding that, although it did not have a contractual right of subrogation, it did have a right to subrogation arising by operation of law and equitable principles. As a result of allowing Sanders to intervene, and in view of the amount of the medical damages involved in this case, the trial court amended its order so as to include language that would allow an appeal by permission pursuant to Rule 5, A.R.App.P. The McKleroys' petition for permission to file this appeal was granted. We affirm in part, reverse in part, and remand with instructions.
The McKleroys raise two issues on appeal: First, whether Sanders has a right to subrogation sufficient to support intervention in this action, even though the plaintiffs have made no claim for medical expenses. Second, assuming that Sanders does have a right to subrogation, does the doctrine of equitable proration announced in Sheehan v. Liberty Mutual Fire Ins. Co., 288 Ala. 137, 258 So.2d 719 (1972), require proration of the $250,000 of Wilson's liability insurance coverage?

SUBROGATION
In Powell v. Blue Cross & Blue Shield of Alabama, 581 So.2d 772 (Ala.1990), we stated that "[t]he equitable considerations that are the underpinnings of subrogation are (1) that the insured should not recover twice for a single injury, and (2) that the insurer should be reimbursed for payments it made that, in fairness, should be borne by the wrongdoer." 581 So.2d at 774. (Citing International Underwriters/Brokers Inc. v. Liao, 548 So.2d 163, 165 (Ala. 1989).) See also Sharpley v. Sonoco Products Co., 581 So.2d 792 (Ala.1990). We held in Powell that "the insurer has no right to subrogation unless and until the insured is made whole for his loss." Powell, supra at 777.
In this case the trial court held that Sanders had no right to conventional subrogation because the above-quoted policy language is conditioned on the McKleroys' seeking recovery for medical expenses from the tort-feasor, but that Sanders did have a right to legal subrogation. We disagree.
Once Richard McKleroy[1] is made whole for his loss due to the accident with Wilson, then Sanders's right to subrogation will arise. Powell, supra. Until there is first a determination of Richard McKleroy's loss and he recovers an amount greater than that loss, Sanders has no right, conventional or legal, to subrogation and can not recover.[2] Although the trial court held that Sanders had no conventional right to subrogation, we hold that once McKleroy is made whole, the policy in this case is sufficient to vest in Sanders a right of subrogation in the amount of its payment of benefits to McKleroy.
In Powell we also recognized that merely because the insured refuses to allocate the damages he collects from the tort-feasor as "medical expenses" does not operate to defeat the insurer's right to subrogation. See, e.g., Sharpley, supra. We noted the following in Powell:
"It is irrelevant as to how the indemnitee may allocate the amounts recovered from the tort-feasor (e.g., it is irrelevant that the complaint may seek damages only for pain and suffering or that the settlement or judgment states that the amount recovered is only for pain and suffering). The court will look to the total dollar amount recovered by the indemnitee, *799 from whatever source, as compensation for his loss."
581 So.2d at 779. Therefore, the mere fact that the insured has not claimed medical expenses as an element of his damages does not defeat the insurer's right to subrogation, although that right will not arise until the insured is first made whole.
In this case the trial court allowed Sanders to intervene as a plaintiff, stating that Sanders "is so situated that the disposition of [this] action will well likely impair or impede its ability to protect that interest, and that interest is not adequately represented by existing parties."[3] Although we hold that Sanders's right to subrogation has not yet arisen, it is still within the trial court's discretion to allow Sanders to intervene and protect its interest. The determination of whether to allow a party to intervene in an action is within the discretion of the trial court, Rule 24(b), A.R.Civ.P., and we will not reverse the trial court's ruling absent an abuse of that discretion. Universal Underwriters Ins. Co. v. East Central Alabama Ford-Mercury, Inc., 574 So.2d 716, 723 (Ala.1990). We hold that the trial court did not abuse its discretion in allowing Sanders to intervene in this case.

PRORATION
We further hold that the issue of proration in this case is not yet ripe for review because there has been no recovery and no trial court ruling as to how any recovery would be divided. Nonetheless, the trial court may find our decision in Powell, supra, to be instructive on this issue. In Powell we wrote the following:
"This holding requires calculation and comparison of two amounts, (1) the amount of the plaintiff's total loss and (2) the total amount that the plaintiff receives in compensation for that loss. The determination of what the plaintiff's loss is, and whether he has been made whole for that loss, is a question of fact. Calculation of the plaintiff's loss requires the finder of fact to consider all elements of that loss, including, but not limited to, damage to property, medical expenses, pain and suffering, loss of wages, and disability. Because punitive damages are not an element of compensation, they can not be included in the calculation of the plaintiff's loss. Determining whether the indemnitee is made whole should be based on the principle that the indemnitee should be made whole, but not more than whole. Likewise, calculation of the amount received in compensation requires consideration of every payment made to, or on behalf of, the plaintiff that arises out of the damages sustained in the event that gave rise to the cause of action."
581 So.2d at 778.
Therefore, based on our decision in Powell, we reverse the trial court's ruling as to when Sanders's right to subrogation arises. We affirm the grant of Sanders's motion to intervene.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and ADAMS, JJ., concur.
MADDOX, HOUSTON and KENNEDY, JJ., concur in the result.
STEAGALL, J., concurs in part and dissents in part.
MADDOX, Justice (concurring in the result).
I agree with the Court that Sanders had standing to intervene in this action, because Sanders, having paid benefits to McKleroy pursuant to the Plan, which included a clause that authorized it to recover "its payments on [McKleroy's] behalf," has a right to recover, under equitable principles, from the wrongdoer, or out of any *800 settlement proceeds, the sums it paid on McKleroy's behalf, if McKleroy has been made whole, of course.
I concur in the result of this case, but only because the policy provision here is not sufficiently specific to entitle Sanders to have priority in recovering the money it paid on McKleroy's behalf. For a full discussion of my views on the an insurer's right to be subrogated under circumstances such as are presented here, see my dissenting opinion in Powell v. Blue Cross & Blue Shield, 581 So.2d 772 (Ala.1990). In my Powell dissent, I explained why I thought the principle of law set out in International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163 (Ala.1989), should be applied in cases such as this. Even though I concur in the result reached in this case, I cannot agree that Powell correctly states the law of Alabama; therefore, by concurring in the result, I should not be understood as agreeing with the Powell opinion.
HOUSTON, J., concurs.
HOUSTON, Justice (concurring in the result).
I concur with Justice Maddox; see also my dissenting opinion in Powell v. Blue Cross & Blue Shield, 581 So.2d 772 (Ala. 1990).
STEAGALL, Justice (concurring in part and dissenting in part).
I concur with that part of the main opinion that affirms the trial court's granting of Sander's motion to intervene. However, I respectfully dissent from that part of the opinion that reverses the trial court's ruling as to when Sander's right to subrogation arises.
NOTES
[1] We note that Bobby McKleroy's claim for loss of consortium is not considered part of Richard McKleroy's loss for purposes of determining when he is made whole. Bobby McKleroy's right to recover an award for loss of consortium from the tort-feasor is subordinate to Richard McKleroy's right to recover an award of damages and Sanders's right to subrogation. See, generally, Mattison v. Kirk, 497 So.2d 120, 123 (Ala.1986).
[2] See Continental Bank & Trust Co. v. Alabama General Ins. Co., 274 Ala. 622, 150 So.2d 688 (1963), regarding the distinctions between legal and conventional subrogation. We do not reach the issue of whether Sanders's right to subrogation is conventional or legal, because there has not yet been a determination of whether its right to subrogation has arisen.
[3] Although the trial court's order appears to treat Sanders's intervention as one of right under Rule 24(a), A.R.Civ.P., Sanders's motion to intervene sought permissive intervention under Rule 24(b). Because we recently held in Universal Underwriters Ins. Co. v. East Central Alabama Ford-Mercury, Inc., 574 So.2d 716, 722 (Ala.1990), that an insurer has no right to intervene in such cases under Rule 24(a), we will interpret the trial court's order as granting Sanders permission to intervene under Rule 24(b).