764 So.2d 538 (1999)
STATE FARM FIRE AND CASUALTY COMPANY
v.
Scott HANNIG and Staci Hannig.
2971247.
Court of Civil Appeals of Alabama.
February 5, 1999.
Rehearing Denied March 26, 1999.
*539 Robert S. Lamar, Jr., and Roderick K. Nelson of Lamar, Nelson & Miller, P.C., Birmingham, for appellant.
Michael K. Beard of Starnes & Atchison, L.L.P., Birmingham, for appellees.
THOMPSON, Judge.
On May 2, 1996, State Farm Fire and Casualty Company ("State Farm") and its insured, Ken Belmore, filed a complaint against Scott Hannig and Staci Hannig in the Circuit Court of Tuscaloosa County, seeking to recover damages for a fire at Belmore's house, and alleging that the Hannigs' negligence or wantonness had caused the fire. On September 3, 1996, the Hannigs filed a motion for a partial summary judgment seeking to have State Farm's claim dismissed. In their motion, the Hannigs asserted that the lawsuit was actually a subrogation action in that State Farm had brought the action to recover moneys it had paid to Belmore for fire damage to his house. They further argued that State Farm's claim was due to be dismissed because, they said, Belmore had not been "made whole" or been "fully compensated" by State Farm for the loss he sustained.
On November 14, 1997, the trial court granted the Hannigs' motion for a partial summary judgment; Belmore remained a party in the lawsuit. On March 3, 1998, State Farm filed a "motion to reconsider" the trial court's partial summary judgment dismissing its claim. The Hannigs and Belmore entered into a settlement agreement, whereby the Hannigs agreed to settle Belmore's claim for $5,000. Thereafter Belmore requested that his claim against the Hannigs be dismissed with prejudice. On May 28, 1998, the trial court entered its final judgment, dismissing Belmore's case with prejudice and denying State Farm's "motion to reconsider." In addition, in its final judgment, the trial court determined that Belmore had not been "made whole" and, therefore, held that State Farm was precluded from pursuing a subrogation claim. State Farm appealed to the Supreme Court of Alabama, which transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
The record reflects that on March 29, 1994, Belmore and the Hannigs entered into a contract pursuant to which the Hannigs were to sell their house to Belmore. The closing on the loan for the sale of the house was scheduled to occur on or before May 20, 1994, but the Hannigs were allowed until May 27, 1994, to vacate the house. The closing occurred on May 18, 1994.
Belmore had obtained a homeowner's insurance policy from State Farm that became effective on May 18, 1994. This *540 policy provided Belmore with liability coverage, personal property coverage, medical payments coverage, and dwelling coverage. The policy had a $250 deductible per claim and provided that State Farm had subrogation rights.
On May 19, 1994, while the Hannigs were still in possession of the house, but after the closing, a fire occurred that resulted in extensive damage to the structure. The cause of the fire is disputed by the parties; however, State Farm and Belmore assert in their complaint that the fire was caused by the negligence or wantonness of the Hannigs.
Belmore filed a claim with State Farm for the fire loss, and State Farm ultimately paid Belmore $64,884.93 for the damage to the home. Before filing the complaint in this action, State Farm and Belmore entered into an agreement that pertained in part to State Farm's subrogation rights. The agreement provided that State Farm would retain counsel on Belmore's behalf to seek recovery from the Hannigs. The agreement further provided that Belmore was to be paid $5,250 of any recovery. Of this sum, $5,000 was to compensate Belmore for the loss of use of the house, the "aggravation" associated with the repairing of the house, and the expenses for temporary alternative housing. The remaining $250 of this sum was a refund of Belmore's $250 deductible. In addition, the agreement provided that State Farm could give any amount in excess of $64,884.93 (the amount State Farm paid Belmore pursuant to his claim) to Belmore.
On appeal, State Farm argues that the trial court erred in entering the partial summary judgment in favor of the Hannigs on its subrogation claim. It is well settled that in reviewing a motion for summary judgment, the reviewing court will take into account the same factors considered by the trial court in initially ruling on the motion for summary judgment. Hall v. Gaines, 613 So.2d 370, 371 (Ala.1993); Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359, 361 (Ala.1993). A summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Ala. R. Civ. P.
The burden of establishing that there is no genuine issue of material fact is on the movant. Burks v. Pickwick Hotel, 607 So.2d 187, 189 (Ala.1992); and Porter v. Fisher, 636 So.2d 682, 684 (Ala.Civ.App. 1994). Once the movant has made this showing, the nonmovant has the burden of presenting evidence creating a genuine issue of material fact. Danford v. Arnold, 582 So.2d 545, 546 (Ala.1991); and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989).
The nonmovant must establish the existence of a genuine issue of material fact by substantial evidence. § 12-21-12, Ala.Code 1975; and Bass v. SouthTrust Bank of Baldwin County, supra. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Our review is further subject to the caveat that this court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990); Harrell v. Reynolds Metals Co., 495 So.2d 1381, 1383 (Ala.1986); and Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986).
In its brief on appeal, State Farm urges this court to overrule Powell v. Blue Cross & Blue Shield of Alabama, 581 So.2d 772 (Ala.1990), a case in which our supreme court held that an insurer has no right to subrogate "unless and until the insured is made whole for his loss." Id., at 777. In *541 the alternative, State Farm argues that if Powell is not to be overruled, it should be clarified or modified. However, this court lacks the authority to overrule decisions of the Supreme Court of Alabama. Section 12-3-16, Ala.Code 1975, provides:
"The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals, and the decisions and proceedings of such courts of appeals shall be subject to the general superintendence and control of the Supreme Court as provided by Constitutional Amendment No. 328."
In reliance on § 12-3-16, Ala.Code 1975, the Supreme Court of Alabama and this court have held that "the Court of Civil Appeals is without authority to overrule the decisions of [the Supreme Court]." Jones v. City of Huntsville, 288 Ala. 242, 244, 259 So.2d 288, 290 (1972); see, also, Fugate v. State Dep't of Indus. Relations, 612 So.2d 1226, 1229 (Ala.Civ.App.1992); Matter of Anonymous, 597 So.2d 709, 711 (Ala.Civ.App.1992).
Our supreme court explained its position on an insurer's subrogation claim to the proceeds of an insured's recovery in a tort action as follows: "It is when the plaintiff's recovery from all sources exceeds the sum total of the plaintiff's damages that the right of subrogation arises." Powell, 581 So.2d at 777. See, also, Sharpley v. Sonoco Products Co., 581 So.2d 792 (Ala.1990); McKleroy v. Wilson, 581 So.2d 796, 798 (Ala.1990); Peck v. Dill, 581 So.2d 800 (Ala.1991).
However, in Complete Health, Inc. v. White, 638 So.2d 784 (Ala.1994), the supreme court expanded the "made-whole" rule and applied it to an insurer's subrogation claim against an alleged tortfeasor. Thereafter, in Alfa Mut. Ins. Co. v. Head, 655 So.2d 975 (Ala.1995), and GEICO Ins. Co. v. Lyons, 658 So.2d 445 (Ala.1995), the supreme court further extended the "made-whole" rule to subrogation claims involving property damage.
In the present case, the Hannigs and Belmore had entered into a settlement agreement, whereby the Hannigs agreed to pay Belmore $5,000 for his uninsured losses. However, Belmore was never compensated for his $250 deductible. The supreme court has precluded an insurer from intervening in an insured's action seeking recovery against a tortfeasor for property damage, holding that an insured who was not compensated for a $500 deductible her insurer had subtracted from a claim payment had not been "made whole." GEICO Insurance Co. v. Lyons, 658 So.2d at 446. In reaching this holding, the supreme court relied on Powell, which held that in the context of an insurer's subrogation right, "calculation of [an insured's] loss requires that all elements of loss be considered, including property damage and personal injury." GEICO Insurance Co. v. Lyons, 658 So.2d at 446, citing Powell, 581 So.2d at 778.
State Farm argues that the Hannigs lack standing to assert that State Farm has no subrogation rights because Belmore was not "made whole." In support of this argument, State Farm cites Economy Fire & Cas. Co. v. Goar, 564 So.2d 867 (Ala.1990); Smith v. Brownfield, 553 So.2d 573 (Ala.1989); and Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932 (Ala.1983). However, these three cases were all decided prior to Powell and Complete Health.
State Farm further contends that the facts of the present case are distinguishable from the facts in Powell because, in the present case, the insured executed a post-claim waiver of his right to be made whole. In an affidavit attached to State Farm's motion to reconsider, Belmore states, "I have no objection to State Farm pursuing their claim for the amount they paid to repair my home and other insurance payments they made to me." However, in Sharpley, supra, an insured signed a subrogation agreement after she was injured in an automobile accident and after she had received $25,000 from the alleged *542 tortfeasor's insurer in settlement of her claim. Despite the subrogation agreement, the Supreme Court applied the Powell rule that an insurer's right to subrogation does not arise until the insured has been made whole for his loss, and it remanded the case for the trial court to determine whether the insured had been "made whole." Sharpley v. Sonoco Products Co., 581 So.2d at 794.
State Farm advances a well-reasoned argument that a tortfeasor should not be permitted to avoid responsibility for his or her negligence by asserting the "made-whole" rule. In support of this argument, State Farm contends that the Powell rule was designed to ensure that the insured is made whole, and that the rule was never intended to shield the tortfeasor (and the tortfeasor's liability insurer) from having to pay damages for the harm caused by the tortfeasor's negligence.
A review of Alabama caselaw on this issue reveals that Powell and Sharpley, the first cases to establish the "madewhole" rule as it relates to insurers' subrogation claims in Alabama, were both decided by a plurality of the supreme court. Further, the supreme court's plurality decisions in Powell and Sharpley were a sharp departure from that court's former position on the issue as set forth in International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163 (Ala.1989), a unanimous decision of the court, released just one year earlier. In their dissenting opinions in Powell and Sharpley, as well as in their special writings in the cases that followed those decisions, Justice Maddox and Justice Houston express grave concerns regarding the threat such decisions pose to contractual obligations.
The facts presented in the present case clearly illustrate the inequitable consequences that can result from a strict, across-the-board application of the "madewhole" rule without regard to the express desires of the insured or the type of insurance involved. In the present case, application of controlling precedent bars the insurer, who has compensated an injured party for a loss, from pursuing a subrogation action against the alleged tortfeasor merely because a $250 deductible was subtracted from the insured's compensation pursuant to the insurance contract, and to the extent of $250, the insured has not been "made whole." Further, this precedent confers an unjust benefit on the alleged tortfeasor, who is permitted to escape responsibility for his or her alleged wrongdoing.
In the present case, we are bound to follow Alabama precedent set in Powell, Complete Health, and GEICO and hold that because Belmore was not compensated for his $250 deductible, he was not "made whole"; therefore, his insurance carrier is precluded from pursuing a subrogation claim against the Hannigs. We affirm the trial court's partial summary judgment dismissing State Farm in the present case.
Should the supreme court decide to address this issue on appeal, we suggest that this might be an appropriate case on which to reexamine the law in Alabama as it relates to an insurer's subrogation action against a tortfeasor. The necessity for reevaluating this issue seems particularly compelling in cases such as this, in which only property damage is involved, and the sole fact tending to prove that the insured has not been fully compensated is the payment by the insured of the policy's deductible.
AFFIRMED.
CRAWLEY, J., concurs.
YATES and MONROE, JJ., concur specially.
ROBERTSON, P.J., concurs in the result.
YATES, Judge, concurring specially.
I agree with the holding of the majority opinion; however, I think it important to point out that the role of an intermediate *543 court is to follow the precedents set by our supreme court. It is not our function to persuade that court to reexamine its prior holdings.
MONROE, J., concurs.