**ALLSTATE INSURANCE COMPANY, as Subrogee of Russell Davis, Plaintiff,**

v.

**HUGH COLE BUILDER, INC.; Hugh Cole Individually and d/b/a Hugh Cole Builder, Inc., Defendants.**

No. Civ.A. 98–A–1432–N.

United States District Court, M.D. Alabama, Northern Division.

Oct. 12, 1999.

---

See also 187 F.R.D. 671.

Donald R. Jones, Montgomery, AL, for plaintiff.

Michael S. Jackson, Montgomery, AL, for defendant.

### MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

#### I. Introduction

This cause is before the court on a Motion for Summary Judgment (doc. 40) filed by the defendants, Hugh Cole Builder, Inc. and Hugh Cole, individually, (collectively referred to as "Cole") on July 23, 1999. In accordance with Alabama Rule of Appellate Procedure 18, this court has proposed, on its own motion, that a determinative question of state law pertaining to the above styled action be certified.

Therefore, the court reserves its ruling on the motion for summary judgment until the certified question is answered, if the Alabama Supreme Court agrees to accept the certification.

## II. Facts

The dispute between the parties in this case stems from the relationship between Russell Davis ("Davis") and Cole. Davis hired Cole to act as general contractor on the construction of a new home in Montgomery, Alabama. The plans and specifications of the house included the installation of an apparently unusual item, an Ikosern fireplace. Cole hired Coston Plumbing Company ("Coston"), as subcontractor, to install the fireplace. Coston apparently had never installed such an item before and sought assistance from Cole and Jenkins Brick Company.

Sometime prior to December 22, 1996, the construction of the house, including the installation of the fireplace, was completed, and the Davis family occupied the structure and used it as their family home. On December 22, 1996, the Davis family went to bed after using the new fireplace. Several hours later they were awakened and discovered fire and smoke coming from the den. According to the parties' submissions, the blaze destroyed much of the home and its contents and forced the Davis family to relocate while the house was rebuilt.

Davis filed a claim for the loss with his insurance carrier, Allstate, which after investigation and adjustment paid Davis the sum of $718,107.48 for the damages to his home and its contents. Allstate did not require him to incur a deductible. In exchange for the payment of the property claim, Allstate requested and received a subrogation agreement[1] with Davis whereby Davis agreed that Allstate would be subrogated to all rights, claims, and interests that Davis might have had against any third person or entity, which might be liable for the expenses and damages reimbursed by Allstate. In this action, Allstate seeks, as subrogee, reimbursement from Cole for the amounts it paid to or on behalf of its insured, Davis. Allstate alleges that the fire was caused by the gas line

serving the Ikosern fireplace and bases its claims against Cole on negligence, breach of implied warranty, and breach of contract.

Shortly after Allstate paid Davis for his property damage, the Davises sought to recover for mental anguish the family allegedly suffered because of the fire. Believing that the installation of the fireplace was the cause of the fire, the Davises hired a personal attorney, who informed both Coston and Cole that the Davises would seek additional compensation from them for mental anguish. The Davises, in conjunction with Allstate, entered into a mediation and settled their claims with Coston but not with Cole, whose attorney claimed to have no settlement authority at the time of the mediation. Allstate then filed this suit against Cole seeking to recover the balance of its payments to Davis not covered by its settlement with Coston. Davis did not sue Cole, but allowed the statute of limitations to run against any claim for mental anguish against Cole. Davis says now, however, that he has not been made whole for his losses.

## III. Discussion

### A. Definition of the Made–Whole Rule.

The Defendants in this cause have moved for summary judgment, citing as authority Alabama's "made-whole" rule, first announced in *Powell v. Blue Cross and Blue Shield of Alabama*, 581 So.2d 772 (Ala.1990) and subsequently refined in later opinions. Cole contends that because Russell Davis, Allstate's insured, has not been made whole for *all* the damage he sustained as a result of the fire, Allstate's subrogation rights have not yet accrued under Alabama law.[2]

In *Powell*, the Alabama Supreme Court clearly stated that "the insurer is not entitled to subrogation unless and until the insured has been made whole for his loss." *Id.* at 777. Moreover, the court

---

1. The parties have not submitted a copy of this agreement to the court.

2. At this time, the court expresses no opinion as to whether Davis has in fact been made whole.

was careful to set out exactly what this rule meant:

> This holding requires calculation and comparison of two amounts, (1) the amount of the plaintiff's *total* loss and (2) the *total* amount that the plaintiff receives in compensation for that loss. The determination of what the plaintiff's loss is, and whether he has been made whole, is a question of fact. Calculation of the plaintiff's loss requires the finder of fact to consider all elements of the loss, including, but not limited to, damage to property, medical expenses, pain and suffering, loss of wages, and disability. Because punitive damages are not an element of compensation, they can not be included in ... [this] calculation.

*Id.* at 778 (emphasis added).

In this cause, the insured, Russell Davis, by affidavit submitted by Cole, alleges that he has suffered property damage in an unspecified amount[3] and also claims to have suffered an undetermined amount of mental anguish as a result of the fire. The Alabama Supreme Court has never distinguished between the type or quality of damage sustained in determining the insured's total loss for the purposes of subrogation; plainly, all damages are aggregated under the above formula to determine a threshold amount of total damages beyond which indemnitors and insurers may seek recovery as a subrogee. If the insured has any uncompensated damages, the right to subrogation does not exist. *See GEICO Insurance Co. v. Lyons*, 658 So.2d 445, 446 (Ala.1995)

(where insurer had paid insured's property damage, the insurer was not subrogated to the rights of the insured because the insured, having paid its deductible and having outstanding, uncompensated damages, had not been made whole).

### B. *Application of the Made–Whole Rule*

The parties disagree as to whether the made-whole rule applies in this case. In its reply brief, Allstate contends that the *Powell* decision stands for the proposition that "the insurer had no right to *intervene* unless 'the plaintiff's recovery from all sources exceeds the sum total of the plaintiff's damages.'" *Pl.Repl.* at 5 (emphasis added) (quoting *Powell,* 581 So.2d at 776). Allstate argues that the made-whole rule is thus inapplicable to the instant case because "Allstate is not seeking to intervene in the Davis lawsuit, nor is Allstate seeking to recoup the balance of the $250,-000.00 the Davises received ... [in the settlement with Coston]. Instead, this lawsuit is an independent attempt by Allstate to recover against a tortfeasor that seeks to hide behind the skirts of caselaw that has no real relation to the facts at bar." *Id.*

Allstate seems to suggest that the Alabama Supreme Court's *Powell* holding limits only the right of an insurer to intervene in an insured's lawsuit. Although it is true that the insurer in *Powell* was seeking to intervene in the insured's law-

---

**3.** It is unclear on the basis of the submissions whether Davis has outstanding, uncompensated property damage. In his affidavits, Davis asserts that "Allstate paid the sum of $718,-107.48 to cover some of our economic loss and damages." *Def.Ex. 1* (Davis affidavit) at 2. It is unclear whether the word some is distributed to include some of "economic loss" and some of "damages." Nowhere do the parties mention what economic damages, if any, remain to be compensated.

Davis's affidavit goes on to say that "Although we reached a settlement with Coston Plumbing Company's insurance company, the amount we received did not fully compensate us for our mental anguish." *See id.* at 2.

Taken together, these bare statements of fact are insufficient to resolve the issue of whether Davis has been made whole. A genuine issue of fact remains, namely, whether Davis has been made whole.

Of course, the mere fact that Davis asserts that he has outstanding uncompensated damages, does not, by itself, mandate a finding that Davis has not been made whole. The resolution of this issue, the Alabama Supreme Court has previously held, properly belongs to the trial court's judgment. *See Complete Health v. White,* 638 So.2d 784, 786 (Ala. 1994). In this case, the court reserves its judgment as to that issue.

suit, the Court did not say that the made-whole rule is applicable only to those situations. The Court plainly said that "the insurer is not entitled to *subrogation* unless and until the insured has been made whole for his loss." *Powell,* 581 So.2d at 777.

Subsequent case law confirms this reading of *Powell.* In *Complete Health v. White,* 638 So.2d 784 (Ala.1994), an insurer was found not to be subrogated to the rights of its insured, who received partial compensation from the insurer and from a settlement with the tortfeasor. *Id.* at 784. The insurer argued, *inter alia,* that despite the fact the insured had not been completely compensated for its loss, the insurer ought to be able to seek recovery directly from the tortfeasor. *Id.* at 788. The insurer in that case argued that

> under traditional principles of subrogation, an insurer is allowed to 'stand in the shoes' of the insured in order to recover its payments from the tortfeasor. It argue[d] that the situation where the insurer's right of subrogation does not arise until the insured is fully compensated really presents a reimbursement issue. Under 'true subrogation,' ... [the insurer] argue[d], the insurer may proceed against the tortfeasor before the insured is fully compensated because, it sa[id], when it [i.e., the insured] proceeds against the tortfeasor the insured and the insurer are no longer competing for a limited set of funds.

*Id.* at 788–89.

The Alabama Supreme Court rejected the argument that there was a meaningful distinction between an action for reimbursement and the more traditional right of subrogation: "In *Powell* we made no such distinction ... We did not contemplate that the insured and the insurer could bring separate actions. Therefore, we hold that because the trial court determined that ... [the insured] had not been fully compensated, ... [the insurer] had no subrogation claim." *Id.* at 789.

 Similarly, it does not matter that the underlying insurance policy in this case covered the Davis property and that Davis also claims to have suffered damages for mental anguish. *See Alfa Mutual Insurance Co. v. Head,* 655 So.2d 975 (Ala.1995) (where insurer covered insured's property damage claim and the insured suffered, among other things, property damages and mental anguish, the insured was held to have no right to subrogation until the insured had recovered for *all* his damages). Likewise, the mere fact that Davis settled his claim with one tortfeasor does not, by itself, necessarily permit Allstate to pursue its claims against the remaining alleged wrongdoer. *See Complete Health v. White,* 638 So.2d 784 (Ala.1994) (saying that "in allocating an amount received by an insured from a third-party tortfeasor ... Alabama does not assume that the amount of the settlement determines the amount of the plaintiff's damages"). By the formula set out above Davis would have to recover his *total* damages for both the property damage and his mental anguish before the right to subrogation in Allstate would accrue.

As to these attempts by Allstate to distinguish the instant case from those that require the application of the made-whole rule, there is, thus, clear precedent to resolve the issue.[4] There is, however, an outstanding issue presented by Allstate and discussed below to which there appears to be no clear controlling precedent.

### (3) *The Equitable Nature of Subrogation*

The court's examination of the equitable nature of subrogation reveals that the law applying the made-whole rule is unclear. The Alabama Supreme Court has re-

---

4. Of course, the mere fact that the made-whole rule may be applicable does not appear to mandate any result until such time as the court determines whether Davis has been made whole. The court reserves its judgment on that issue until the appropriate time, should such a determination be necessary.

peatedly emphasized the equitable nature of subrogation, saying that "the entire law of subrogation, conventional or legal, is based on equitable principles." *Powell,* 581 So.2d at 774. In *Powell,* the court spoke extensively to its understanding of the equitable underpinnings of the made-whole rule:

> The very heart of the bargain when the insured purchases insurance is that if there is a loss he or she will be made whole.... Where either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insurer has been paid to assume.... Our review of the origins and development of the law of subrogation persuades us that a prerequisite to the right of subrogation is the full compensation of the insured. In effect, an attempt to contract away this prerequisite to the right of subrogation would defeat the right itself. This is not compatible with the principle of fairness that underlies equitable doctrines. Therefore we hold that the insurer has no right to subrogation unless and until the insured is made whole for its loss.

*Id.* at 777 (citations omitted).

The salient feature of the rule described above is that in a contest between the insured and the insurer over a limited recovery pool, the insurer will lose. In *Powell,* the court confronted attempts by the insured and the insurer, which had paid the insured's claim, to recover from the alleged tortfeasor. *Id.* at 773. Because both were vying for a share of the limited recovery available, the tortfeasor's liability policy limit, the court applied the above rule and held that the insurer could not recover because the insured had not been made whole. *Id.* at 781.

■ The Alabama Supreme Court has repeatedly upheld this ruling. In most of its confrontations with the question, the insured and the insurer were competing for a share of an uncertain or limited recovery pool; the court reiterated that in such a competition, the insurer must, as a matter of equity, go unpaid. *See, e.g.*

*GEICO Insurance Company v. Lyons,* 658 So.2d 445 (Ala.1995); *Complete Health v. White,* 638 So.2d 784 (Ala.1994). In other cases, the court was unable to conclude, on the basis of the record before it, whether a right to subrogation existed because it was unclear whether the insured had been made whole. *See, e.g., Peck v. Dill,* 581 So.2d 800 (Ala.1991); *Sharpley v. Sonoco Products Co.,* 581 So.2d 792 (Ala.1990).

Putting aside, for a moment, the application of the made-whole rule, it is important to examine why the right of subrogation exists at all. The law of subrogation, of course, does not always take place in the context of the battle between insurance companies and their policyholders. In many cases, the insurance company pays the insured's claim, fully compensates the insured, and seeks recovery directly from the wrongdoer. According to the Alabama Supreme Court, the reason that the law permits an insurer to seek recovery as a subrogee is because equity demands it:

> The entire law of subrogation, conventional or legal, is based upon equitable principles. The equitable considerations that are the underpinnings of subrogation are (1) that the insured should not recover twice for a single injury, and (2) that the insurer should be reimbursed for payments it made, that in fairness, should be borne by the wrongdoer.

*Powell* 581 So.2d at 774 (citations omitted).

In so describing the right of subrogation, the Court was explaining why the right of subrogation exists: to prevent unjustly enriching either the insured, who might otherwise recover from both the insurer and the wrongdoer, or the wrongdoer, who might otherwise receive the windfall of not being forced to compensate his victim.

The reasons *why* the law provides a right of subrogation appear to differ sharply from the reasons *whether,* in a particular case, that right is recognized. The former involves the aforementioned concerns about unjust enrichment; the latter involves application of the made-whole

rule. Nothing, however, in the Court's articulation of reasons for recognizing the right of subrogation generally, the prevention of unjust enrichment, would necessarily mandate that the insured have the priority of recovery over the insurer (i.e., the made-whole rule). Instead, the Court appears to have supplied an additional framework, based upon independent equitable grounds, to justify its articulation of the made-whole rule; namely that "the very heart of the bargain when the insured purchases insurance is that if there is a loss he or she will be made whole." *Powell.*

In the appropriate circumstances, this made-whole rule, for determining whether, in a particular case, the right of subrogation exists, comports with the more general equitable principles underlying the existence of the right of subrogation itself. For example, in a situation where the insured has not been fully compensated because all potential sources of recovery were insufficient to fully compensate him, equity would not necessarily require that a right of subrogation be recognized; that is, there would be no reason to fear that someone would be unjustly enriched. Conversely, where the insurer has, by itself, made the insured whole, equity would seem to require that the right of subrogation be recognized lest the wrongdoer or the tortfeasor be unjustly enriched. *See McKleroy v. Wilson*, 581 So.2d 796 (Ala. 1990).

■ A bright-line application in this case of this made-whole rule, however, (assuming that Davis has not been made whole as he says by affidavit) would seem to negate the equitable foundations upon which the entire right of subrogation is built. In the cause before this court, Davis, the insured, has received substantial sums of money and his insurer, Allstate, is not attempting to take anything away from him. Although Davis has

claimed to have suffered additional outstanding damages, he allowed the statute of limitations to expire against Cole, the alleged tortfeasor from which Allstate wishes to attempt to recover the balance of money it paid out under its policy with Davis. As noted above, Cole has enlisted Davis's aid in supporting the motion for summary judgment in which Cole gives as grounds the assertion that Davis has not been made whole.[5]

To apply the made-whole rule to these facts would effectively permit the alleged wrongdoer to escape any exposure to liability, without, at the same time, conferring any benefit upon Davis, the insured. The apparent reason the Supreme Court adopted the made-whole rule was to prevent the insurer from having priority over the insured in a contest over limited funds. *See Powell*, 581 So.2d at 777. Those reasons, however, do not apply in a case where the insured is not seeking—nor is able to seek—additional recovery from alleged wrongdoers. Whether Allstate recovers anything or not in no way affects Davis's current or future ability to recover. This is true even assuming that Davis has not been made whole; he can receive no more—as a practical matter—than he already has.

Therefore, to apply the made-whole rule in this circumstance would seem to be manifestly unjust and contrary to the equitable principles the Alabama Supreme Court has articulated as the foundations of subrogation; namely, by allowing the alleged wrongdoer to escape liability, he would receive a considerable, undeserved windfall, assuming that liability could be established against him. He at least would escape any exposure to possible liability. This seems contrary to equity and, hence, contrary to the law of subrogation and contrary to *Powell.*

---

5. Exactly why Davis, after allowing the statute of limitations to run, should now come to the aid of the person and entity allegedly responsible for burning down his house is a bit of a mystery. The court does note that Davis has hired Cole to rebuild his house with the money paid to him by Allstate.

In summary, although the Alabama Supreme Court has applied the made-whole rule consistently, the court has also very clearly stated that subrogation is an equitable doctrine, which attempts to prevent either the insurer, the insured, or the wrongdoer from receiving an undeserved and unjust benefit. For this reason, it is unclear whether the Alabama made-whole rule is applicable to this case. The application of the made-whole rule and the rules of equity to the facts of this case would result in mutually exclusive and inconsistent results. Requiring that the insured be made whole, when he has elected not to pursue additional recovery for his allegedly uncompensated damages, would appear to negate one of the basic equitable purposes of subrogation: "that the insurer should be reimbursed for payments it made, that in fairness, should be borne by the wrongdoer." *Powell,* 581 So.2d at 774

The court notes that the Alabama Supreme Court has recently agreed to exercise discretionary review in *State Farm Fire & Casualty Co. v. Hannig,* — So.2d ——, 1999 WL 50500 (Ala.Civ.App.1999), *cert. granted* No. 1981136 (Ala., Aug. 20, 1999). In that case, the Alabama Court of Civil Appeals similarly noted "inequitable consequences that can result from a strict, across-the-board, application of the 'made-whole' rule...." *Hannig,* — So.2d at ——, 1999 WL 50500 at 5. Therefore, it appears that the Supreme Court may revisit and clarify the circumstances under which this rule should be applied.

For these reasons, the court will certify the following question of law to the Alabama Supreme Court:

DOES THE "MADE–WHOLE" RULE PREVENT A PROPERTY INSURER WHICH HAS PAID ITS INSURED UNDER THE POLICY, AND OBTAINED A SUBROGATION AGREEMENT, FROM MAINTAINING A TIMELY–FILED SUBROGATION SUIT AGAINST A THIRD–PARTY WHICH ALLEGEDLY CAUSED THE DAMAGE, WHERE THE INSURED HAS NOT BEEN MADE WHOLE, BUT HAS ALLOWED THE STATUTE OF LIMITATIONS TO RUN WITHOUT FILING ANY SUIT AGAINST THE THIRD PARTY.

### III. CONCLUSION

For the reasons explained in this opinion, the court ORDERS as follows:

(1) All proceedings in this cause are STAYED pending acceptance and resolution of the certified question by the Supreme Court of Alabama.

(2) The clerk of this court is ORDERED and DIRECTED to immediately transmit to the Supreme Court of Alabama the certificate prepared by the court certifying a question of law which is deemed determinative of the claims in this cause and to which there are no clear controlling precedents in the decisions of the Supreme Court of Alabama. The clerk is further ORDERED to comply with the Supreme Court of Alabama's request, if made, that it be provided with any or all portions of the record in this matter.

### Certified Question of Law

Pursuant to the Alabama Rules of Appellate Procedure, Rule 18, the United States District Court for the Middle District of Alabama requests the Supreme Court of Alabama to answer a question of law which is deemed determinative of an action before said federal court and to which there is no clear controlling precedent.

Pursuant to Rule 18 and in support of this certification, the following facts are shown to the Court:

(1) The style of said case is *Allstate Insurance Company, as subrogee of Russell Davis v. Hugh Cole Builder Inc., and Hugh Cole, Individually and d/b/a Hugh Cole Builder, Inc.*

(2) The facts showing the nature of the cause and the circumstances out of which the questions or propositions of law arise are set out and discussed in detail in the United States District Court's Memoran-

dum Opinion entered on this day, a copy of which is attached to this Certificate.

(3) The question of law to be answered is:

DOES THE "MADE–WHOLE" RULE PREVENT A PROPERTY INSURER WHICH HAS PAID ITS INSURED UNDER THE POLICY, AND OBTAINED A SUBROGATION AGREEMENT, FROM MAINTAINING A TIMELY–FILED SUBROGATION SUIT AGAINST A THIRD–PARTY WHICH ALLEGEDLY CAUSED THE DAMAGE, WHERE THE INSURED HAS NOT BEEN MADE WHOLE, BUT HAS ALLOWED THE STATUTE OF LIMITATIONS TO RUN WITHOUT FILING ANY SUIT AGAINST THE THIRD PARTY.

This statement of the question is not designed to limit the inquiry of the Supreme Court of Alabama, or in any way to restrict the Court's consideration of the problems involved and the issues as it perceives them to be in its analysis of the record in this case. In particular, the United States District Court notes that similar issues of law and fact are present in *State Farm Fire & Casualty Co. v. Hannig*, —— So.2d ——, 1999 WL 50500 (Ala.Civ.App.1999), *cert. granted* No. 1981136 (Ala., Aug. 20, 1999), in which the Supreme Court of Alabama has recently granted certiorari.

This Certificate has been prepared by said federal court.