This case involves a subrogation claim filed by an insurer against alleged tortfeasors to recover amounts it had paid to its insured. This Court granted certiorari review specifically to re-examine the rule that an insurer that has paid claims of its insured has no subrogation rights against a tortfeasor who harmed the insured until the insured is "made whole." That rule was established in Powell v. Blue Cross Blue Shield of Alabama,581 So.2d 772 (Ala. 1990), and its progeny, Sharpley v. SonocoProducts Co., 581 So.2d 792 (Ala. 1990); McKleroy v. Wilson,581 So.2d 796 (Ala. 1990); Peck v. Dill, 581 So.2d 800 (Ala. 1991);Complete Health, Inc. v. White, 638 So.2d 784 (Ala. 1994); AlfaMut. Ins. Co. v. Head, 655 So.2d 975 (Ala. 1995); and Geico Ins.Co. v. Lyons, 658 So.2d 445 (Ala. 1995).[1]
State Farm Fire and Casualty Company ("State Farm") and its insured, Ken Belmore, sued Scott Hannig and Staci Hannig, alleging that the Hannigs were responsible for a fire that damaged a house that was owned by Belmore and insured by State Farm. State Farm sought to recover money it had paid to its insured under the terms of its policy insuring the house. The trial court granted the Hannigs' motion for summary judgment, and the Court of Civil Appeals affirmed the summary judgment. State Farm Fire Cas. Co.v. Hannig, 764 So.2d 538 (Ala.Civ.App. 1999). For the reasons discussed below, we reverse the judgment of the Court of Civil Appeals, and we remand the case.
 Facts and Procedural History
In March 1994, Ken Belmore contracted with Scott and Staci Hannig for Belmore to buy the Hannigs' house. The parties closed the sale on May 18 of that year, but the contract allowed the Hannigs to remain in possession of the house until May 27. Belmore obtained insurance coverage on the house from State Farm; it became effective on the date of the closing. During the period after the closing but before Belmore took possession from the Hannigs, a fire caused substantial damage to the house.
Belmore filed a claim for benefits under his insurance policy, and State Farm paid him $64,884.93. Subsequently, State Farm and Belmore reached an agreement concerning the practical implications of the subrogation provisions in Belmore's policy. They agreed that State Farm would obtain counsel to represent both State Farm and Belmore and that State Farm would pay all the costs of litigation to be instituted against the Hannigs. They agreed that Belmore would receive $5,250 of any recovery against the Hannigs. Of that amount, $5,000 was to compensate Belmore for the loss of use of his house, the cost he had incurred for temporary alternative housing, and the frustration he had endured while having his house repaired. The sum of $250 was to compensate Belmore for his $250 deductible.
State Farm and Belmore sued the Hannigs. The Hannigs moved for a summary judgment against State Farm, arguing that State Farm had not fully made Belmore whole and therefore was not entitled to any subrogation damages. The trial *Page 545 
court granted that motion. Belmore subsequently settled with the Hannigs for $5,000, and the case was dismissed.
State Farm appealed from the summary judgment, and the Court of Civil Appeals affirmed. We have granted State Farm's petition for certiorari review.
 Discussion
It is apparent from a reading of the main opinion of the Court of Civil Appeals that although the Court of Civil Appeals followed the law as stated in Powell, two of its members thoughtPowell had been incorrectly decided by a plurality of this Court. That main opinion stated that this "court's plurality decisions inPowell and Sharpley were a sharp departure from [this] court's former position on the issue as set forth in InternationalUnderwriters/Brokers, Inc. v. Liao, 548 So.2d 163 (Ala. 1989), a unanimous decision of the court, released just one year earlier." 764 So.2d at 542.
Judge Thompson stated in the main opinion for the Court of Civil Appeals:
 "The facts presented in the present case clearly illustrate the inequitable consequences that can result from a strict, across-the-board, application of the `made-whole' rule without regard to the express desires of the insured or the type of insurance involved. In the present case, application of controlling precedent bars the insurer, who has compensated an injured party for a loss, from pursuing a subrogation action against the alleged tortfeasor merely because a $250 deductible was subtracted from the insured's compensation pursuant to the insurance contract, and to the extent of $250, the insured has not been `made whole.' Further, this precedent confers an unjust benefit on the alleged tortfeasor, who is permitted to escape responsibility for his or her alleged wrongdoing."
Id. at 542 (emphasis added).
We agree with Judge Thompson that in Powell a plurality of this Court did make a "sharp departure" from the law of subrogation that had previously existed in this State. InInternational Underwriters/Brokers, Inc. v. Liao, supra, this Court had held that the normal equitable rules of subrogation could be modified by contract,[2] but, as pointed out by Judge Thompson, this Court reversed course a year later in Powell and has continuously followed the Powell rationale in subsequent cases.
As Judge Thompson's opinion concludes, and as State Farm recognizes, if we apply the Powell rationale to the facts and circumstances of this case, then we must conclude that the trial court and the Court of Civil Appeals reached the correct result. Recognizing that Powell does control if it is not modified or changed, State Farm argues that this Court should overrule Powell
and reinstate the prior rule of Liao.
Although we have a healthy respect for the principle of stare decisis, we should not blindly continue to apply a rule of law that does not accord with what is right and just.[3] In other words, while we *Page 546 
accord "due regard to the principle of stare decisis," it is also this Court's duty "to overrule prior decisions when we are convinced beyond . . . doubt that such decisions were wrong when decided or that time has [effected] such change as to require a change in the law." Beasley v. Bozeman, 294 Ala. 288,291, 315 So.2d 570, 572 (1975) (Jones, J., concurring specially).
What, then, are the competing interests in this case? On the one hand, the doctrine of stare decisis supports the Hannigs' argument that the trial court appropriately applied the rule ofPowell and its progeny and that the judgment of the trial court should be affirmed. On the other hand, as Judge Thompson pointed out in this case, application of the Powell rule "confers an unjust benefit on [a] tortfeasor, who is permitted to escape responsibility for his or her wrongdoing." Hannig, 764 So.2d at 542.
Powell was decided eight years ago; it overruled Liao, which had been decided the previous year. We recognize that the doctrine of stare decisis supports the argument that Powell and its progeny should not be overruled. Based on the considerations stated above, however, we conclude that time has revealed the inherent inequity in applying the Powell rule; therefore, "we are convinced beyond . . . doubt that [Powell and the other cases listed above that apply the Powell rule] were [wrongly] decided;"[4]
that they should be overruled; and that the rule of Liao should be reinstated.
In Liao, this Court asked and answered a question relating to the right of an insurer to be subrogated when it has paid a claim under the terms of a contract. The Court asked:
 "Is the general rule that a subrogee is not entitled to recover, absent full recovery by the insured . . ., in any way altered by the fact that the subrogation interest is based on a contract between the parties?"
Liao, 548 So.2d at 165. The Court's answer was:
 "We recognize that, while the doctrine of subrogation is of purely equitable origin and nature, it may be modified by contract."
Id., 548 So.2d at 165-66. Applying that rule to the facts of this case, we conclude that the judgment of the Court of Civil Appeals is due to be reversed. We reverse that judgment, and we instruct the Court of Civil Appeals to reverse the summary judgment against State Farm and to remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HOOPER, C.J., and HOUSTON and SEE, JJ., concur.
LYONS, J., concurs specially.
COOK, JOHNSTONE, and ENGLAND, JJ., concur in the result but dissent from the rationale.
[1] The main opinion of the Court of Civil Appeals in this case (authored by Judge Thompson and concurred in by Judge Crawley) impliedly asked this Court to review the law of subrogation as expressed in Powell and its progeny:
 "A review of Alabama caselaw on this issue reveals that Powell and Sharpley, the first cases to establish the `made-whole' rule as it relates to insurers' subrogation claims in Alabama, were both decided by a plurality of the supreme court. Further, the supreme court's plurality decisions in Powell and Sharpley were a sharp departure from that court's former position on the issue as set forth in International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163 (Ala. 1989), a unanimous decision of the court, released just one year earlier."
State Farm Fire Cas. Co. v. Hannig, 764 So.2d 538, 542
(Ala.Civ.App. 1999).
[2] Liao, 548 So.2d at 166.
[3] Chief Justice Vanderbilt, of the New Jersey Supreme Court, wrote extensively of the role of the doctrine of stare decisis in his dissent in Fox v. Snow, 6 N.J. 12, 76 A.2d 877 (1950):
 "The doctrine of stare decisis neither renders the courts impotent to correct their past errors nor requires them to adhere blindly to rules that have lost their reason for being. The common law would be sapped of its life blood if stare decisis were to become a god instead of a guide. The doctrine when properly applied operates only to control change, not to prevent it. As Mr. Justice Cardozo has put it, `Few rules in our time are so well established that they may not be called upon any day to justify their existence as means adapted to an end. If they do not function they are diseased. If they are diseased, they must not propagate their kind. Sometimes they are cut out and extirpated altogether. Sometimes they are left with the shadow of continued life, but sterilized, truncated, impotent for harm.' Nature of the Judicial Process (1921) 98. . . .
". . . .
 ". . . The doctrine of stare decisis tends to produce certainty in our law, but it is important to realize that certainty per se is but a means to an end, and not an end in itself. Certainty is desirable only insofar as it operates to produce the maximum good and the minimum harm and thereby to advance justice. . . . When it appears that the evil resulting from a continuation of the accepted rule must be productive of greater mischief to the community than can possibly ensue from disregarding the previous adjudications on the subject, courts have frequently and wisely departed from precedent, 14 Am. Jur., Courts, § 126."
6 N.J. at 23-25, 76 A.2d at 883-84.
[4] Beasley, 294 Ala. at 291, 315 So.2d at 572 (Jones, J., concurring specially).