The Water Works and Sewer Board of the City of Birmingham (hereinafter "the Board") filed this action against Petitioners Alliance (hereinafter "Petitioners Alliance") and the Election Commission of the City of Birmingham and its members (hereinafter collectively referred to as "the Election Commission"), seeking a judgment declaring that a petition addressed to the Birmingham City Council (hereinafter "the Council") and a proposed ordinance presented by Petitioners Alliance was invalid and also seeking to enjoin the election called for by the petition. Petitioners Alliance and the Election Commission filed a motion to dismiss; the trial court granted the motion, without prejudice, on the grounds that the Board lacked standing to bring the action, that it sought an impermissible advisory opinion, and that the trial court lacked subject-matter jurisdiction to hear the Board's complaint. The Board appeals. We dismiss the appeal as moot.
The time line of events in this action is undisputed. On July 10, 2000, the Board adopted a resolution authorizing it to make an offer to the City of Birmingham to re-acquire the water and sewer systems of the City of Birmingham (hereinafter "the System"). On July 18, 2000, the Council accepted the Board's offer and adopted Ordinance No. 00-123, authorizing city officials to execute the appropriate documents to transfer the System to the Board.[1] The mayor vetoed the ordinance, but the Council overrode the mayor's veto. On September 15, 2000, pursuant to Act No. 452, Ala. Acts 1955 (the Mayor-Council Act of 1955), as supplemented by Act No. 294, Ala. Acts 1965, Petitioners Alliance filed a petition requesting the adoption by initiative of a proposed ordinance[2] *Page 707 
that would require an election before the System could be transferred to the Board or any other entity and seeking the repeal of Ordinance No. 00-123.[3]
In October 2000, the Jefferson County probate judge certified that the petition contained the requisite number of signatures of qualified voters, and the probate judge presented the petition to the Council. The Council voted not to adopt the ordinance proposed in the petition, and, in accordance with Act No. 294, transferred the petition to the Election Commission on October 17, 2000.
On December 1, 2000, the Board filed this action against the Petitioners Alliance and the Election Commission, alleging that the petition and the proposed ordinance were invalid and seeking a declaratory judgment and injunctive relief. Petitioners Alliance and the Election Commission filed a motion to dismiss. The trial court granted the motion to dismiss on January 12, 2001. On January 16, 2001, the Election Commission set the election on the proposed ordinance for February 27, 2001. The Board filed a motion to alter, amend, or vacate the trial court's judgment; that motion was denied on February 23, 2001.[4]
On that same day, the documents transferring the System to the Board were executed.[5] On February 27, 2001, the election was held and the ordinance proposed by Petitioners Alliance passed. On March 16, 2001, the Board filed a notice of appeal with this Court.
This action is moot because (1) the trial court cannot enjoin the election, because the election has already taken place, and (2) a declaratory judgment would be futile because there is now no justiciable controversy.See Masonry Arts, Inc. v. Mobile County Comm'n,628 So.2d 334, 335 (Ala. 1993); City of Mobile v.Scott, 278 Ala. 388, 178 So.2d 545 (1965).
Neither party requested a stay of the execution of the acquisition agreement, pursuant to which the System was to be transferred, or a stay of the election. Because the election has already taken place, the trial court cannot grant the injunction requested by the Board.Masonry Arts, supra, 628 So.2d at 335. Furthermore, *Page 708 
there is no justiciable controversy in this case. The record does not reflect a present controversy between any of the parties. The documents transferring the System have been executed. Although the election was held after the acquisition agreement was executed, there is no argument before us that the ordinance passed at the election should retroactively invalidate the already executed agreement. Therefore, "[t]here is now no justiciable controversy in this case and this court will not make a declaration in a declaratory judgment proceeding which will be futile. This court will not render a purely advisory opinion nor decide moot questions under the guise of a declaratory judgment."City of Mobile, supra, 278 Ala. at 390,178 So.2d at 547. "Whatever may have been the situation when the instant suit was [originally filed] or when the [judgment] was rendered, the case is now moot, and, for that reason, the appeal is due to be and is dismissed."Id.
APPEAL DISMISSED AS MOOT.
LYONS, JOHNSTONE, and WOODALL, JJ., concur.
MOORE, C.J., concurs in the result.
[1] Ordinance No. 00-123 states:
"AN ORDINANCE PROVIDING FOR THE MAYOR, COUNCIL PRESIDENT, THE CITY CLERK AND OTHER APPROPRIATE OFFICERS OF THE CITY TO BE AUTHORIZED TO TAKE SUCH ACTIONS AND TO EXECUTE AND DELIVER SUCH AGREEMENTS, INSTRUMENTS, AND CERTIFICATES AS THEY DEEM NECESSARY TO CONSUMMATE THE TRANSACTIONS OF THIS ORDINANCE SO AS TO CAUSE THE TRANSFER AND CONVEYANCE OF THE WATER AND SEWER SYSTEMS TO THE WATER WORKS AND SEWER BOARD TO THE CITY OF BIRMINGHAM AND THE ASSUMPTION BY THE WATER WORKS AND SEWER BOARD OF THE CITY OF BIRMINGHAM OF CERTAIN INDEBTEDNESS OF THE CITY SECURED BY THE REVENUES OF THE WATER AND SEWER SYSTEMS."
(Capitalization in original.)
[2] The proposed ordinance states, in pertinent part:
"BE IT ORDAINED by the Council of the City of Birmingham, Alabama, that any and all title, right of interest in all property, whether real, personal, mixed or any combination thereof, including any land, building, plant, system, facility, equipment, or other property, owned, leased, maintained, controlled, used, useful or capable of future use in connection with the gathering, collecting and impounding of water, the transporting, provision and distribution of water for domestic and/or industrial use, the treatment, utilization, recycling, and processing of waste water, or other services associated with water and sewer services for the City of Birmingham and surrounding areas by the City or in conjunction with water and sewer plant and protection of the watershed, intakes, filtration systems and stations, pumps and pumping stations, reclamation facilities or other water and sewer desirable or otherwise used or to be used, operated or maintained in connection therewith (hereinafter `Water and Sewer Facilities') shall not be alienated, transferred, conveyed, assigned, sold, or leased to any person(s) or entity unless and until such alienation, transfer, lease, or sale involving in any manner the City's Water and Sewer Facilities be approved by a majority of the electors of the City in a special or general election. Further, the Council ordains that this ordinance shall not be rescinded, repealed, or amended without approval of a majority of the electors of the City in a special or general election."
[3] Section 3.15 of the Mayor-Council Act of 1955, as supplemented by § 2 of Act No. 294, provides for the adoption of ordinances by initiative and referendum in certain cities such as Birmingham.
[4] The attorney general of the State of Alabama filed a motion to intervene and a motion to consolidate in support of the Board; however, because the motion to dismiss had been granted before the motion to intervene was filed, the attorney general's motions were declared moot and were denied. The attorney general is not a party to this appeal.
[5] Those documents are not a part of this record; however, they were included as part of the record in a related appeal filed by the mayor, Kincaid v. Council ofthe City of Birmingham, (No. 1000926, Nov. 2, 2001) ___ So.2d ___ (Ala. 2001) (table), and we take judicial notice of them. The documents, including a quitclaim deed, a bill of sale, and an acquisition agreement, were attached as an exhibit to Mayor Bernard Kincaid's motion to alter, amend, or vacate the February 23, 2001, summary judgment in favor of the Council and the Board in that case. Additionally, all parties maintain in their briefs that the president of the Council executed the documents transferring the System to the Board.